**Eclophia SMITH, Jr., Appellee,**

v.

**James MARCANTONIO, Bill Armontrout, Donald Cline, Orolee Brady, Dick Moore, Dr. Richard K. Bowers, Appellants.**

No. 89–2476.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1990.

Decided Aug. 6, 1990.

**501**

Bruce Farmer, Jefferson City, Mo., for appellants.

Andrew C. Webb, Sedalia, Mo., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Eclophia Smith, Jr. brought this civil rights action to recover damages for injuries he sustained as an inmate at the Missouri State Penitentiary. James Marcantonio, manager of the prison honor dormitory, Orolee Brady, correctional officer assigned to the honor dormitory, and Dr. Richard K. Bowers, chief medical officer of the prison hospital, appeal from a district court order denying their motion for summary judgment on the grounds of qualified immunity. We reverse the district court's denial of summary judgment.

Unknown prison inmates poured a scalding liquid on Smith as he slept in the honor dormitory, causing severe burns. Smith was transported to the University of Missouri Hospital for treatment, including skin grafts on the burned areas. After this treatment, Smith returned to the prison hospital with directions for medication, daily dressing changes for his burns, and weekly checkups at the University Hospital. For about three weeks, Smith alternated between the prison hospital and a dormitory for inmates awaiting their prison assignments, where he received outpatient treatment. When Smith complained about his outpatient care, he was readmitted to the prison hospital. Afterwards, Smith returned to the honor dormitory. Smith also received follow-up examinations at the University Hospital. Smith's wounds have healed to complete recovery.

Smith claims Marcantonio and Brady failed to take adequate precautions to protect him from harm by other inmates. Although Dr. Bowers never treated him, Smith claims Dr. Bowers acted with deliberate indifference to his medical needs, because Smith did not receive the exact treatment the University Hospital prescribed and Dr. Bowers prematurely discharged him from the prison hospital while his burns were still healing.

Prison officials are entitled to qualified immunity unless: their conduct violates a clearly established statutory or constitutional right; they knew or should have known the right was clearly established; and they knew or should have known their conduct violated the right. *Tyler v. Barton*, 901 F.2d 689, 690–91 (8th Cir.1990) (per curiam). Smith's right to be protected from harm by fellow inmates and his right to adequate medical care are beyond dispute. In this case, however, the summary judgment record fails to support Smith's claims that Marcantonio, Brady, and Dr. Bowers violated those rights. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Our inquiry into Smith's claims against Marcantonio and Brady begins and ends with his deposition testimony:

Q. To this day [do] you [ ] know [which] inmates [scalded you]?

Smith: No.

.    .    .    .    .

Q. [D]id you have any animosity towards any other inmate within the Missouri State Penitentiary?

Smith: No.

.    .    .    .    .

Q. Do you have any reason to believe [ ] anybody might want to scald you?

Smith: No.

Q. Did you give any of the [prison officials] any reason to believe that somebody might scald you?

Smith: No, because I [didn't] know. It's [ ] something that just happened.

. . . . .

Q. [Y]ou told Mr. Marcantonio that you feared for your life?

Smith: After the incident, yes.

Q. How about prior to the incident?

Smith: No, because I didn't know ... this was gonna happen.

. . . . .

Q. But you never complained to Mr. Marcantonio prior to this incident that security was inadequate?

Smith: No.

Q. Did [you feel] at any time prior to this incident [ ] that your life was in danger?

Smith: No.

. . . . .

Q. [Y]ou didn't feel there were any inmates in [the honor dormitory] that were a threat to you?

Smith: I didn't fear that at all, no.

. . . . .

Q. Did you think that Officer Brady could have done anything to prevent this?

Smith: No, I don't believe he could.

. . . . .

Q. How about Mr. Marcantonio, could he have done anything to prevent this from happening?

Smith: No, I don't think so. He wasn't there at the time ... that it happened, no.

Smith's factually impoverished claim that Marcantonio and Brady were aware of the risk of injury to Smith is frivolous. The summary judgment evidence shows Marcantonio and Brady were unaware of any immediate threat of harm to Smith. Smith himself had no inkling he was in any danger of harm before he was injured, and he never complained of specific fears for his safety. Smith sustained his injuries in the first violent episode in the honor dormitory, and the identity and origin of his attackers remain a mystery. Nor does the evidence support Smith's assertion that Brady permitted inmates to enter Smith's sleeping quarters to harm him. Indeed, in his deposition Smith testified neither Marcantonio nor Brady could have prevented the attack. Because Smith has not made a showing sufficient to establish Marcantonio and Brady failed to protect him from known dangers of attacks by fellow inmates, *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.), cert. denied, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984), or that a pervasive risk of harm prevailed within the honor dormitory, *Porm v. White*, 762 F.2d 635, 637 (8th Cir.1985), Marcantonio and Brady are entitled to a summary judgment grant of qualified immunity.

■ Smith's claim that Dr. Bowers was deliberately indifferent to Smith's serious medical needs is equally deficient. In a nutshell, Smith merely disagrees with his medical treatment. Smith thought he ought to remain in the prison hospital instead of convalescing in nonmedical housing with outpatient care. He demanded more pain-killing medication than the prison's medical personnel were willing to dispense. He was dissatisfied with the frequency of his bandage changes. He blamed Dr. Bowers for a one-week delay in his first checkup at the University Hospital. Because Smith's complaints represent nothing more than mere disagreement with the course of his medical treatment, he has failed to state an eighth amendment claim of deliberate indifference. *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir.1988) (per curiam). Further, Dr. Bowers cannot be held liable for Smith's claims of inadequate treatment by other medical personnel because respondeat superior is not a basis for liability under 42 U.S.C. § 1983. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir.1990). Dr. Bowers is entitled to a summary judgment grant of qualified immunity.

■ Summary judgment is designed to remove factually unsubstantial cases like

Smith's from crowded district court dockets. *See City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273 (8th Cir. 1988). We thus reverse the district court's denial of summary judgment and remand for the entry of judgment dismissing Smith's claims against Marcantonio, Brady, and Dr. Bowers.

BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.

In reversing the magistrate's [1] denial of Brady's and Marcantonio's motion for summary judgment, the majority ignores the analysis and factual predicates relied upon by the magistrate in denying that motion. After reviewing the record, I conclude that the magistrate correctly decided the issue.

The majority rests its reversal of the magistrate solely upon Smith's admission that he did not fear for his own safety. The majority extrapolates from this admission that Brady and Marcantonio had no reason to believe that inmates in the honor dormitory needed protection from the other inmates and that Smith therefore has not shown a violation of his right to be protected from attacks by his fellow inmates. This analysis contains two flaws. First, it disposes of the case solely upon the subjective knowledge of Smith, the plaintiff, whereas the proper inquiry should focus on whether the defendants recklessly disregarded Smith's right to be free from attack. Second, it ignores the factual predicates upon which the magistrate relied.

On their motion for summary judgment, Brady and Marcantonio are entitled to qualified immunity unless there exists no dispute of fact that 1) their conduct violated a clearly established constitutional right, 2) they knew or should have known that this right was clearly established and 3) they knew or should have known that their conduct violated that right. *Brown v. Frey,* 889 F.2d 159, 165 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). The majority reverses the magistrate's denial of summary judgment on the grounds that Smith has not made a showing sufficient to establish that

Brady's and Marcantonio's conduct violated Smith's right to be protected from harm by his fellow inmates. *Ante* at 502–503. A review of the record demonstrates otherwise.

Smith testified in his deposition and contended before the magistrate that defendant Marcantonio, the manager of the honor dormitory, and defendant Brady, the guard on duty at the time of the attack, failed to follow a written prison policy requiring that all inmates entering the honor dormitory from the general prison population be screened and searched. Joint Appendix at 67, 70, 72–73. Smith also testified that the inmates in the honor dormitory slept in rooms without doors and that only one guard protected the 115 inmates housed on the three floors of the honor dormitory. *Id.* at 6–7, 39, 40, 72. Defendants have not disputed these allegations.

The essence of Smith's claim, therefore, is that Brady and Marcantonio failed to provide the only protection available to the inmates in the honor dormitory and that this failure constituted reckless disregard for Smith's right to be free from attack in a prison setting. It seems obvious that inmates housed in the unprotected confines of the honor dormitory are at risk from inmates entering from the general prison population of the Missouri State Penitentiary. Moreover, prison officials charged with responsibility over the honor dormitory have a heightened responsibility to observe prison policies with respect to prisoner safety, if only because there are fewer such policies in the honor dormitory and each takes on greater importance.

As the magistrate recognized, the factual issue whether defendants were reckless or merely negligent in ignoring the prison policies belonged to the jury, not the court. I am not willing to decide as a matter of law, as the majority in effect does, that the defendants' failure to screen and search inmates cannot constitute reckless disregard for Smith's right to be free from attack simply because Smith admitted that he felt safe. In my view, the mental state

---

**1.** Under the authority of 28 U.S.C. § 636(c) (1988), the parties consented to have a United States Magistrate conduct all proceedings and order the entry of judgment.

of Smith, an inmate, has little bearing on the mental state and conduct of the defendants, a guard and dormitory manager.

The magistrate properly noted that summary judgment was premature as based solely on Smith's testimony. Smith adduced sufficient evidence to create a factual dispute whether defendants recklessly disregarded his right to be free from attack. A jury should pass on Brady's and Marcantonio's conduct under the circumstances of this case as it presently stands, or, at least, further discovery is justified. Accordingly, I dissent as to the claims of Smith against Brady and Marcantonio.