**Charles LATIMORE, Appellee,**

v.

**George WIDSETH, Appellant.**

**No. 92–1641.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1992.

Decided Feb. 25, 1993.

---

Mary Lane Egan, Minneapolis, MN, argued (Toni A. Beitz, on the brief), for appellant.

Douglas Peine, St. Paul, MN, argued, for appellee.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BENSON,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Defendant appeals the District Court's denial of his summary judgment motion in Plaintiff's action under 42 U.S.C. § 1983. We affirm.

In February, 1987, Charles Latimore pleaded guilty to a charge of aggravated robbery and was released pursuant to an agreement that he would co-operate with the State in a separate case. Specifically, Latimore agreed to testify against Grailon Williams and John Scruggs, members of a gang of which Latimore had also been a member, and who were implicated in the murder of Christine Kreitz.

George Widseth was the Assistant Hennepin County Attorney who negotiated Latimore's plea. Pursuant to the plea, Latimore provided a formal statement on the Kreitz murder. Latimore also acknowledged his willingness to testify as to the assertions made in the statement that he signed on October 28, 1986.

In January, 1987, shortly before the plea hearing, Widseth reiterated the terms of the plea agreement in a letter to Latimore's attorney. Widseth also stated that the agreement would have to be disclosed to Williams's attorney. Subsequently, Latimore's name appeared on the list of state's witnesses in the Williams case. A copy of Latimore's statement was provided to Williams's attorney, who asserts that he discussed Latimore's potential testimony with his client. Although Widseth also communicated the substance of the testimony to Scruggs's attorney, Scruggs testified at his post-conviction relief hearing

---

* The Honorable Paul Benson, United States District Judge for the District of North Dakota, sitting by designation.

that he did not learn of Latimore's identity prior to or during his trial. Ultimately, Latimore was called as a witness in neither prosecution.

At Latimore's plea hearing in February, 1987, Widseth informed the court that Latimore had fulfilled his part of the agreement by providing the statement and agreeing to testify in the Kreitz case. The court accepted Latimore's plea, and the transcript of the plea hearing, held in open court, was filed promptly with the clerk of the court and became a public record.

Six months after his release, Latimore was again arrested, this time for robbing and attacking an elderly woman. When journalists asked Widseth why Latimore had received lenient treatment on his previous aggravated robbery charge, Widseth told them of Latimore's cooperation with the State. Whether Widseth specified that it was the Kreitz case in which Latimore cooperated is in dispute. No documentation of his statement to the media was offered. We have only the journalists' paraphrase, which may have been supplemented with information from other sources. In any event, when two local television stations broadcast reports on the matter, they stated that Latimore had agreed to testify in the Kreitz murder cases. Two months after the broadcasts, Latimore, having been incarcerated in a Minnesota correctional facility, was attacked in his cell by four men who he claims were known members of the gang implicated in the Kreitz murder case.

Latimore commenced this action against county and state officials in September, 1988, alleging that their actions and omissions had led to the assault. The only claim at issue on appeal is against George Widseth based upon his statements to the news media and the subsequent prison assault. Latimore links Widseth's statements causally to the assault, which, Latimore posits, violated his Eighth Amendment rights. Widseth moved for summary judgment, arguing that he was entitled to qualified immunity and that Latimore could not, as a matter of law, establish that Widseth's statements were causally related to

the prison attack. The district court denied Widseth's motion on both bases, and Widseth appeals, arguing that he was entitled to summary judgment on either or both theories.

## I.

Officials performing discretionary functions enjoy qualified immunity and are thereby shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). An official performing a discretionary function can be required to respond to a civil suit only if his or her actions fail to meet the test of "objective legal reasonableness." *Id.* at 819, 102 S.Ct. at 2738; *see also Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–41, 97 L.Ed.2d 523 (1987). Since *Harlow* transformed the relevant inquiry into one of objective legal reasonableness, the issue of qualified immunity has ordinarily been considered one of pure law. *See, e.g., J.H.H. v. O'Hara,* 878 F.2d 240 (8th Cir.1989). We have recognized, however, that there are some cases that will require a factual inquiry into a relevant matter, namely whether the official knew or should have known that the conduct would violate, or cause a violation of, plaintiff's constitutional rights. Most such cases will involve an invasion that is not an immediate consequence of defendant's activities but nevertheless follows as a proximate and likely result of them. *See, e.g., Smith v. Marcantonio,* 910 F.2d 500, 501 (8th Cir.1990). The district court believed that this case was such a case, and we agree. We review the judgment below, therefore, to determine whether the right alleged to have been violated was clearly established and whether a reasonable fact-finder could conclude from the record before the court that defendants could or should have known that the conduct would violate, or cause a violation of, plaintiff's constitutional rights.

The district court first noted that a prisoner's Eighth Amendment right to be free from attack by fellow inmates is a well-established one of which Widseth knew or should have known. *See Andrews v. Siegel,* 929 F.2d 1326, 1330 (8th Cir.1991); *Bailey v. Wood,* 909 F.2d 1197, 1199 (8th Cir.1990). We agree on this question of law. In the factual inquiry into whether Widseth knew or should have known that his behavior violated the right or would likely lead to its violation, the district court noted several facts. First, Widseth was an experienced prosecutor who knew the propensities of gangs. Second, Latimore asserts that, pursuant to his plea bargain, his statement regarding the roles of Williams and Scruggs in the Kreitz murder was to remain confidential unless he was called as a government witness. This alleged aspect of the agreement provides an additional indication that Widseth knew of the potential danger to Latimore. Finally, Widseth knew that Latimore was to be incarcerated as a result of the armed robbery charge that prompted Widseth's public statement. Accordingly, the court concluded that Widseth knew or should have known that his public revelation regarding Latimore's willingness to testify against the gang leaders would likely lead to a prison attack against him.

We agree with the district court and note also that Christine Kreitz was a victim of the gang's retaliation when she became an informant against them. Given the recency of that retribution, carried out by the same gang against whose members Latimore had offered testimony, there is ample evidence from which a fact-finder could conclude that Widseth should have known his conduct would lead to a violation of Latimore's right. Accordingly, we affirm the district court holding that Widseth was not entitled to qualified immunity.

## II.

■ Section 1983, of course, requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation. Absent such a relationship, the defendant is entitled to dismissal. In this case, then, in order for Latimore ultimately to prevail he must establish that Widseth's statements were a proximate cause of the deprivation of his Eighth Amendment rights. To survive a summary judgment motion on this issue, Latimore must present evidence from which a reasonable jury could conclude that Widseth's statements were the proximate cause of the violation of his constitutional right.

Widseth points to other sources by which gang members could have learned that Latimore cooperated in the Kreitz murder trial. Specifically, he notes that Latimore's willingness to cooperate in the Kreitz case was discussed at his plea hearing, held in open court. A transcript of that plea hearing became a public record, available to any person. Additionally, he notes that Latimore's name was on witness lists provided to both Scruggs's and Williams's attorneys.

In discussing causation, the district court acknowledged the possibility that Widseth's remarks were too remote from the attack on Latimore to provide a basis for Widseth's liability. The district court, however, considered that there was sufficient evidence of proximate causation to defeat Widseth's summary judgment motion on this issue. The court wrote:

The evidence ... suggests that the public broadcast was substantially certain to inform the general public, including ... gang members, of [Latimore's] role in the Kreitz murder trial. Both the Kreitz murder trial and charges pending against [Latimore] when the press conference occurred attracted substantial publicity. The likelihood that gang members became aware of plaintiff's role in the Kreitz murder trial is significant, particularly in light of Widseth's unambiguous remarks specifically implicating [Latimore].

We agree with the district court that sufficient evidence has been presented to support a conclusion that Widseth's statements were a proximate cause of the prison attack that violated Latimore's Eighth Amendment rights. Even though the detail of Widseth's statement to the media is disputed, in the context of this summary

judgment motion we must consider the evidence in the light most favorable to the non-moving party. Here, then, we assume that Widseth specifically mentioned that Latimore's cooperation occurred with respect to the Kreitz trial. The presence of Latimore's name on the witness lists proves very little, for he might have been a compelled rather than a cooperating witness. Also, as previously noted, Scruggs indicated that he didn't realize Latimore's identity when his attorney informed him that Latimore would testify. Scruggs apparently did not realize that there was a former gang member named Latimore. As for the presence of this same information in a public record, we simply note the improbability that gang members consulted such records. Furthermore, even if they had been so informed, gang members might not have acted on the information. When Latimore's cooperation was broadcast by two local television stations, however, it became public knowledge, and the collective pride of the gang was on the line. Their motivation to retaliate may have been greatly increased by the broadcast.

### III.

We affirm and remand to the District Court. We also note that Widseth's First Amendment right to free speech appears to be implicated in this case, and we invite the parties to address this issue in further proceedings.

BENSON, Senior District Judge, dissenting.

I respectfully dissent. I concur with the majority that Widseth's First Amendment Right to free speech appears to be implicated, but, I do not think we have to reach that issue. I would hold there are no genuine issues of material fact, and, Widseth is entitled to qualified immunity and summary judgment dismissal of Latimore's claim.

Latimore's Eighth Amendment Right to be free from cruel and unusual punishment was clearly violated, but, not by defendant Widseth. It is undisputed that the information disclosed by Widseth was public information as set out in the following quote from the majority opinion:

> At Latimore's plea hearing in February, 1987, Widseth informed the court that Latimore had fulfilled his part of the agreement by providing the statement and agreeing to testify in the Krietz case. The court accepted Latimore's plea, and the transcript of the plea hearing, held in open court, was filed promptly by the clerk of the court and became a public record.

Latimore benefited from the plea agreement. Pursuant to the agreement, the court released him from confinement on the basis of "time served." If the court had known, or had reason to believe, Latimore would, or might, commit another vicious crime against an elderly woman six months after his release, it obviously would not have accepted the plea agreement. I would hold as a matter of law, that under the facts of this case, Latimore forfeited any right of recourse against the prosecuting attorney arising out of his plea agreement, already a matter of public record in the prior case, by reason of the attorney's further disclosure of that agreement on a legitimate inquiry from the press several months later.

The custody and jurisdiction of the plaintiff at the time of the attack rested with the prison officials, not the prosecuting attorney. There has been no showing in this case that defendant Widseth's truthful communication in response to a public inquiry lacked, "objective legal reasonableness." I would hold that defendant George Widseth is entitled to qualified immunity as a matter of law.