**Charles Dewey LATIMORE, Appellee,**

v.

**George WIDSETH, Assistant Hennepin County Attorney, Appellant.**

**No. 92–1641.**

United States Court of Appeals, Eighth Circuit.

Submitted June 8, 1993.

Decided Oct. 12, 1993.

---

Toni Ann Bunker Beitz, Minneapolis, MN, argued (Mary L. Egan and Toni A. Beitz, on the brief), for appellant.

Douglas Peine, St. Paul, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, en banc.

BOWMAN, Circuit Judge.

George Widseth appeals the District Court's decision denying his motion for summary judgment based on qualified immunity in Charles Latimore's 42 U.S.C. § 1983 case.[1] A panel of this Court affirmed and remanded for trial. *Latimore v. Widseth*, 986 F.2d 292 (8th Cir.1993) (subsequent history omitted). We granted Widseth's petition for rehearing en banc, vacated the panel opinion, and now reverse the judgment of the District Court.

In February 1987, Charles Latimore pleaded guilty to a charge of aggravated robbery. Pursuant to a plea bargain negotiated by George Widseth, Assistant Hennepin County (Minnesota) Attorney, and agreed to by the parties in October 1986, Latimore consented to give a formal statement and to testify in another case Widseth was prosecuting, in exchange for a recommendation for leniency in sentencing on the aggravated robbery charge. Although he was not involved, Latimore had information about the gang-related murder of sixteen-year-old Christine Kreitz, who was killed because she allegedly had provided information to authorities about the perpetrators of a gun store robbery. Latimore's statement implicated Grailon Williams and John Scruggs, both members of the Disciples, a gang with which Latimore had been associated.

Latimore's plea hearing, where his cooperation with authorities in the Kreitz case was noted, took place in open court and on the record, and a transcript of the hearing was filed with the clerk of the court. Besides being a matter of public record, the terms of the plea agreement and the substance of Latimore's statement were disclosed to the defense in the Kreitz case, as required by Minnesota law. Further, Latimore was identified as a possible witness in the case, although he was not called to testify at the trial.[2] On the aggravated robbery charge, Latimore received a sentence of forty-nine months, with credit for time served, the balance of the sentence suspended, three years of probation, and a requirement that he complete a substance abuse treatment program. Latimore was released at sentencing (in fact, he was released after the plea hearing) and served no additional jail time for the aggravated robbery.

On September 9, 1987, Latimore was arrested for the brutal stabbing and robbery of a ninety-one-year-old woman in her apartment. Because of the heinous nature of the crime, the media were provoked to inquire of Widseth why someone with Latimore's long criminal history was not still serving time for the aggravated robbery offense. Widseth answered truthfully, revealing no more information than that which could be found in the public record, that Latimore received a reduced sentence because he provided information to the prosecution in the Kreitz murder case. Widseth's comments were reported on the local television news.

One month later, Latimore was sent to the state correctional facility at Stillwater, Minnesota. His admission interviews show that prison authorities asked whether he knew of anyone in prison who might wish to harm him or whether he required special protection. He responded that he did not. On November 13, 1987, Latimore was moved from the orientation unit at Stillwater to the general prison population. One week later, he was attacked in his cell and stabbed by

---

**1.** Appeal from the denial of a motion for summary judgment, ordinarily a disallowed interlocutory appeal, is an appealable "final order" when the motion for summary judgment was based on a qualified immunity defense. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

**2.** Notwithstanding these circumstances under which Latimore's identity and informant status became a matter of public record and, more especially, known to the Kreitz defendants specifically, Latimore claims that Widseth promised him anonymity. He offers nothing to substantiate that claim except for his own affidavit, even though numerous written documents and records memorialized the plea bargain. Under our disposition of this case, this factual issue is of no consequence.

four inmates who, Latimore claims, were known gang members.[3]

■ The only issue before us is whether Widseth is entitled to qualified immunity on Latimore's claim.[4] The availability of the defense to an official exercising discretionary authority in a particular case requires careful consideration of the established law at the time, the state actor's objective knowledge of that law, and the complained-of conduct. "Qualified immunity protects a government official from suit if, at the time of the challenged acts, it was not clearly established that those actions would violate clearly established law of which a reasonable person would have known." *Jackson v. Rapps*, 947 F.2d 332, 338 (8th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Immunity will be appropriate if the § 1983 plaintiff does not allege violation of a clearly established constitutional right in the first instance. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The mere assertion of such a right, however, will not be adequate: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus the defense still may be viable, even in the face of a clearly established (and violated) constitutional right, if the defendant can demonstrate "the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038 (citations omitted) (quoting *Harlow*, 457 U.S. at 819, 818, 102 S.Ct. at 2739, 2738).

■ The constitutional right invoked here, and well established in the law, is Latimore's Eighth Amendment right to be free from cruel and unusual punishment, specifically, "to be protected from harm by fellow inmates." *Smith v. Marcantonio*, 910 F.2d 500, 501 (8th Cir.1990). The "well established" nature of the right asserted does not short-circuit our inquiry. Latimore cannot assert a broad constitutional right, and violations thereof, and survive a motion for summary judgment on qualified immunity grounds simply because there is no dispute that he does indeed have the right asserted. "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038. If we accept Latimore's theory, we would be permitting him "to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*

■■ Latimore in effect claims a constitutional right to have withheld from the media truthful matters of public record concerning his having obtained a favorable plea agreement in exchange for information useful to the prosecution in another case. There is no such constitutional right, even vaguely established, in our jurisprudence, and no objectively reasonable prosecutor would have been aware of such an established right. Moreover, assuming we were to accept without question that the broad Eighth Amendment right to be protected from harm inflicted by fellow inmates is the constitutional right properly invoked here, Widseth could not have known that his actions would violate that right. No case has held a prosecutor liable under § 1983 for violating a prisoner's Eighth Amendment rights as a result of the

---

3. Because they would be factual issues appropriate for resolution at a trial in the case, we do not consider some rather serious questions of causation, *i.e.*, whether Latimore's attackers were in fact gang members, whether the attack was in retaliation for Latimore's having provided information to prosecutors in the Kreitz case, and whether Widseth's comments as to Latimore's informant status were the attackers' only source of that information.

4. In the term just ended, the Supreme Court held that a prosecutor was not entitled to absolute immunity in a § 1983 case for his out-of-court statements to the press. *Buckley v. Fitzsimmons*, — U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The Court did not "consider whether some or all of respondents' [including the state attorney's] conduct may be protected by qualified immunity." *Id.* at ——, 113 S.Ct. at 2609.

prosecutor's truthful statements to the press concerning matters of public record.

The related § 1983 cases, involving absolute immunity claims, constitutional protections other than Eighth Amendment rights, defendants other than prosecutors, and false statements to the press, would not put a reasonable person on notice that he could be liable as Latimore suggests. *See, e.g., Hobbs v. Evans*, 924 F.2d 774, 775 (8th Cir.1991) (holding prison guard liable for violating prisoner's Eighth Amendment right to be free from attack by fellow prisoner because guard labeled prisoner an informant); *Gobel v. Maricopa County*, 867 F.2d 1201, 1206 (9th Cir.1989) (concluding that § 1983 action against prosecutor challenging pretrial conditions of confinement stated due process claim because pretrial detainee cannot be punished; absolute immunity defense was unavailable to prosecutor but qualified immunity was not considered); *Marx v. Gumbinner*, 855 F.2d 783, 791 (11th Cir.1988) (refusing absolute immunity to prosecutor where plaintiff claimed violation of due process rights for allegedly defamatory press release); *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir.1980) (holding plaintiff asserted due process claim for alleged defamatory statements resulting in alleged injury), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). Although "'precise factual correspondence' with precedent" is not required for a right to be clearly established and an objectively reasonable state actor to know he is violating the right, *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir.1989) (quoting *Lappe v. Loeffelholz*, 815 F.2d 1173, 1177 (8th Cir. 1987)), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990), the facts here are far too different and the "correspondence" with established law is far too remote for liability to attach. Widseth gave truthful answers based on the public record to the media's probing questions concerning a matter of vital public interest. By reference to the law clearly established then and now, Widseth's actions were objectively reasonable.

█ Further, the nature of Widseth's position as assistant prosecutor would not put him on notice of potential § 1983 liability for his actions in that role. We will not refuse qualified immunity to a § 1983 defendant for failing to protect a prisoner from harm at the hands of fellow inmates when that defendant had neither the responsibility nor the ability to protect the prisoner from such harm. Widseth's actions, although taken in his role as a state actor, were unrelated to Latimore's incarceration, understandably so in view of the fact that Widseth had no knowledge at the time he spoke of whether Latimore would be incarcerated or, if so, where, much less whether there was any reason prison officials would be unable to protect him from harm inflicted by other inmates. Latimore cannot show that Widseth, whose job description does not include the supervision of the State's prisons, "failed to protect him from known dangers of attacks by fellow inmates or that a pervasive risk of harm" to which Widseth failed to respond prevailed within the Stillwater facility. *Smith v. Marcantonio*, 910 F.2d at 502. The mere negligence on the part of Widseth that Latimore alleges is not adequate to prove an Eighth Amendment violation. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 1097, 1096, 89 L.Ed.2d 271 (1986)). Widseth falls into neither of the non-protected categories, and we hold that he is entitled to qualified immunity.

The judgment of the District Court is reversed and the case is remanded with direction that the court enter summary judgment in favor of Widseth on the ground of qualified immunity.

MORRIS SHEPPARD ARNOLD, Circuit Judge, joined by RICHARD S. ARNOLD, Chief Judge, McMILLIAN, and JOHN R. GIBSON, Circuit Judges, dissenting.

I respectfully dissent from the court's judgment in this case.

In February, 1987, Charles Latimore pleaded guilty to a charge of aggravated robbery and was released pursuant to an

agreement that he would co-operate with the State in a separate case. Specifically, Latimore agreed to testify against Grailon Williams and John Scruggs, members of a gang of which Latimore had also been a member, and who were implicated in the murder of Christine Kreitz. George Widseth was the Assistant Hennepin County Attorney who negotiated Latimore's plea. Pursuant to the plea, Latimore provided a formal statement on the Kreitz murder. Latimore also acknowledged his willingness to testify as to the assertions made in the statement that he signed on October 28, 1986.

In January, 1987, shortly before the plea hearing, Widseth reiterated the terms of the plea agreement in a letter to Latimore's attorney. Widseth also stated that the agreement would have to be disclosed to Williams's attorney. Subsequently, Latimore's name appeared on the list of state's witnesses in the Williams case. A copy of Latimore's statement was provided to Williams's attorney, who asserts that he discussed Latimore's potential testimony with his client. Although Widseth also communicated the substance of the testimony to Scruggs's attorney, Scruggs testified at his post-conviction relief hearing that he did not learn of Latimore's identity prior to or during his trial. Ultimately, Latimore was called as a witness in neither prosecution.

At Latimore's plea hearing in February, 1987, Widseth informed the court that Latimore had fulfilled his part of the agreement by providing the statement and agreeing to testify in the Kreitz case. The court accepted Latimore's plea, and the transcript of the plea hearing, held in open court, was filed promptly with the clerk of the court and became a public record.

Six months after his release, Latimore was again arrested, this time for robbing and attacking an elderly woman. When journalists asked Widseth why Latimore had received lenient treatment on his previous aggravated robbery charge, Widseth told them of Latimore's cooperation with the State. Whether Widseth specified that it was the Kreitz case in which Latimore cooperated is in dispute. No documentation of his statement to the media was offered. We have only the journalists' paraphrase of Widseth's statement, which may have been supplemented with information from other sources. In any event, when two local television stations broadcast reports on the matter, they stated that Latimore had agreed to testify in the Kreitz murder cases. Two months after the broadcasts, Latimore, having been incarcerated in a Minnesota correctional facility, was attacked in his cell by four men who he claims were known members of the gang implicated in the Kreitz murder case.

Latimore commenced this action against county and state officials in September, 1988, alleging that their actions and omissions had led to the assault. The only claim at issue on appeal is against George Widseth based upon his statements to the news media and the subsequent prison assault. Latimore links Widseth's statements causally to the assault, which, Latimore posits, violated his Eighth Amendment rights. Widseth moved for summary judgment, arguing that he was entitled to qualified immunity and that Latimore could not, as a matter of law, establish that Widseth's statements were causally related to the prison attack. The district court denied Widseth's motion on both bases, and Widseth appeals, arguing that he was entitled to summary judgment on either or both theories.

## I.

Officials performing discretionary functions enjoy qualified immunity and are thereby shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). An official performing a discretionary function can be required to respond to a civil suit only if his or her actions fail to meet the test of "objective legal reasonableness." *Id.* at 819, 102 S.Ct. at 2739; *see also Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987). Since *Harlow* transformed the relevant inquiry into one of objective legal reasonableness, the issue of qualified immunity has ordinarily been considered one of pure

law. *See, e.g., J.H.H. v. O'Hara,* 878 F.2d 240 (8th Cir.1989). We have recognized, however, that there are some cases that will require a factual inquiry into a relevant matter, namely whether the official knew or should have known that the conduct would violate, or cause a violation of, plaintiff's constitutional rights. Most such cases will involve an invasion that is not an immediate consequence of defendant's activities but nevertheless follows as a proximate and likely result of them. *See, e.g., Smith v. Marcantonio,* 910 F.2d 500, 501 (8th Cir.1990). The district court believed that this case was such a case, and I agree. We should review the judgment below, therefore, to determine whether the right alleged to have been violated was clearly established and whether a reasonable fact-finder could conclude from the record before the court that defendants could or should have known that the conduct would violate, or cause a violation of, plaintiff's constitutional rights.

The district court first correctly noted that a prisoner's Eighth Amendment right to be free from attack by fellow inmates is a well-established one of which Widseth knew or should have known. *See Andrews v. Siegel,* 929 F.2d 1326, 1330 (8th Cir.1991); *Bailey v. Wood,* 909 F.2d 1197, 1199 (8th Cir.1990). In the factual inquiry into whether Widseth knew or should have known that his behavior violated the right or would likely lead to its violation, the district court noted several facts. First, Widseth was an experienced prosecutor who knew the propensities of gangs. Second, Latimore asserts that, pursuant to his plea bargain, his statement regarding the roles of Williams and Scruggs in the Kreitz murder was to remain confidential unless he was called as a government witness. This alleged aspect of the agreement provides an additional indication that Widseth knew of the potential danger to Latimore. Finally, Widseth knew that Latimore was to be incarcerated as a result of the armed robbery charge that prompted Widseth's public statement. Accordingly, the court concluded that Widseth knew or should have known that his public revelation regarding Latimore's willingness to testify against the gang leaders would likely lead to a prison attack against him.

I agree with the district court and note also that Christine Kreitz was a victim of the gang's retaliation when she became an informant against them. Given the recency of that retribution, carried out by the same gang against whose members Latimore had offered testimony, there is ample evidence from which a fact-finder could conclude that Widseth should have known his conduct would lead to a violation of Latimore's right.

II.

I respectfully disagree with the court's first characterization of the constitutional right that Latimore seeks to vindicate in this litigation. He is asking for protection of his right to be free of an unreasonable risk of assault from his fellow inmates, a right, as we have seen, that is firmly established in our cases. To claim, as the court does, that Latimore seeks to construct a "right to have withheld from the media truthful matters of public record," seriously misstates and trivializes Latimore's theory of the case. It passes over, moreover, Latimore's assertion that Widseth promised him not to reveal the details of the agreement to anyone who had no legal right to know them, a promise that the court relegates to a footnote, asserting that, under its "disposition of this case," the promise "is of no consequence." I suggest, on the contrary, that the promise is of extraordinary consequence, for at least two reasons.

First of all, the breach of promise furnishes proof of Widseth's state of mind: I believe that a deliberate breach of contract can amount to a "deliberate indifference" to an inmate's constitutional rights. *See Brandscomb v. Brewer,* 669 F.2d 1297 (8th Cir. 1982). Second, the promise effectively estops Widseth from asserting that he could not know that liability for foreseeable consequential losses could follow from his revelations, since breach of contract is by no means a novel legal theory. It is familiar to virtually every citizen, and certainly to a licensed lawyer. The proposition that Widseth's revelations were legally reasonable as an objective matter cannot therefore be supported: It would be hard to think of a legal duty

more "clearly established" than the obligation to live up to one's word. The fact, if it is one, that "no case has held a prosecutor liable under § 1983 for violating a prisoner's Eighth Amendment rights as a result of the prosecutor's truthful statements," on which the court relies, is beside the point because it too narrowly characterizes the right being asserted, and, more importantly, posits a wholly unrealistic "surprise" that makes Widseth's claim of lack of notice ring hollow. The lack of authority directly in point is merely evidence that government lawyers recognize their duty to keep their promises, and do so.

It is, of course, almost always possible to characterize a plaintiff's claim as novel, by deliberately casting the conceptual net to encompass facts that will make the case appear to be unique. But a fair legal characterization requires that we omit such facts as are not material to the question of notice to the defendant. And for me, this case lies comfortably within the perimeters of the principle that State actors cannot behave in a manner that is deliberately indifferent to a prisoner's right to be free from assault by fellow inmates.

### III.

Section 1983, of course, requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation. Absent such a relationship, the defendant is entitled to dismissal. In this case, then, in order for Latimore ultimately to prevail he must establish that Widseth's statements were a proximate cause of the deprivation of his Eighth Amendment rights. To survive a summary judgment motion on this issue, Latimore must present evidence from which a reasonable jury could conclude that Widseth's statements were the proximate cause of the violation of his constitutional right.

Widseth points to other sources by which gang members could have learned that Latimore cooperated in the Kreitz murder trial. Specifically, he notes that Latimore's willingness to cooperate in the Kreitz case was discussed at his plea hearing, held in open court. A transcript of that plea hearing became a public record, available to any person.

Additionally, he notes that Latimore's name was on witness lists provided to both Scruggs's and Williams's attorneys.

In discussing causation, the district court acknowledged the possibility that Widseth's remarks were too remote from the attack on Latimore to provide a basis for Widseth's liability. The district court, however, considered that there was sufficient evidence of proximate causation to defeat Widseth's summary judgment motion on this issue. The court wrote:

> The evidence ... suggests that the public broadcast was substantially certain to inform the general public, including ... gang members, of [Latimore's] role in the Kreitz murder trial. Both the Kreitz murder trial and charges pending against [Latimore] when the press conference occurred attracted substantial publicity. The likelihood that gang members became aware of plaintiff's role in the Kreitz murder trial is significant, particularly in light of Widseth's unambiguous remarks specifically implicating [Latimore].

I agree with the district court that sufficient evidence has been presented to support a conclusion that Widseth's statements were a proximate cause of the prison attack that violated Latimore's Eighth Amendment rights. Even though the detail of Widseth's statement to the media is disputed, in the context of this summary judgment motion we must consider the evidence in the light most favorable to the non-moving party. Here, then, I assume that Widseth specifically mentioned that Latimore's cooperation occurred with respect to the Kreitz trial. The presence of Latimore's name on the witness lists proves very little, for he might have been a compelled rather than a cooperating witness. Also, as previously noted, Scruggs indicated that he didn't realize Latimore's identity when his attorney informed him that Latimore would testify. Scruggs apparently did not realize that there was a former gang member named Latimore. As for the presence of this same information in a public record, we simply note the improbability that gang members consulted such records. Furthermore, even if they had been so informed, gang members might not have acted on the

information. When Latimore's cooperation was broadcast by two local television stations, however, it became public knowledge, and the collective pride of the gang was engaged. Their motivation to retaliate may have been greatly increased by the broadcast.

## IV.

I would therefore affirm and remand to the District Court. I note too that Widseth's First Amendment right to free speech appears to be implicated in this case, and I would therefore invite the parties to address this issue in further proceedings.