**Ray McCASLIN and Pauletta Childress, as Co–Administrators of the Estate of Kendall Ray McCaslin, Deceased, Plaintiffs,**

v.

**Chad WILKINS, Individually and in his Capacity as an Alma, Arkansas, Police Officer, Russell White, Individually and in his Official Capacity as the Chief of Police of the Alma, Arkansas, Police Department; and the City of Alma, Arkansas, Defendants.**

Civil No. 97–2136.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 10, 1998.

John VanWinkle, Rose & VanWinkle, Fayetteville, AR, for Plaintiffs.

Shane Perry, North Little Rock, AR, Charles B. Dyer, Jr., Alma City Attorney, Van Buren, AR, for Defendants.

### MEMORANDUM OPINION and JUDGEMENT ON ISSUE OF QUALIFIED IMMUNITY

DAWSON, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment under Rule 56, Fed.R.Civ.Pro filed on April 17, 1998.[1]

---

1. Plaintiffs, Ray McCaslin and Pauletta Childress, the Co–Administrators of the Estate of Kendall Ray McCaslin, filed this action on June 30, 1997. Defendants filed an Answer on July 22, 1997. After a motion to dismiss and motion for summary judgment was filed, plaintiffs filed a Motion to Amend the Complaint on August 4, 1997, to which the defendants did not object. An Order granting the motion to amend was entered on August 8, 1997. The Court also denied defendants' first motion for judgment on the pleadings in an Order entered on August 13, 1997. A second motion to amend the complaint was filed on May 12, 1998, as a response to plaintiff's second motion for judgment on the pleadings to which an Order granting an amended complaint was entered on October 23, 1997, rendering the defendants' second motion for judgment on the pleadings moot.

The Second Amended Complaint is filed under the provisions of 42 U.S.C. §§ 1983 and 1988, contending that defendants' actions on November 23, 1996, violated the decedent's Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiffs also assert claims based on state law, including a wrongful death cause of action against Separate Defendant Chad Wilkins, hereinafter "Wilkins," individually and in his official capacity, and Separate Defendant City of Alma. A negligence cause of action is asserted against Separate Defendant Chief Russell White, hereinafter "White," individually and in his official capacity, for failing to properly train Wilkins, thereby causing the death of the decedent, Kendall Ray McCaslin. Finally, the plaintiffs allege the tort of Outrage against Wilkins for Wilkins' shooting of the decedent. Plaintiffs seek compensatory and punitive damages.

Jurisdiction is proper under the general federal question statute, 28 U.S.C. § 1331. The Court has pendent jurisdiction over the state law claims under 28 U.S.C. § 1367.

**Background.**

On November 23, 1996, the decedent, hereinafter "McCaslin," while driving southbound on U.S. Highway 71 near Alma, Arkansas, in a small pickup truck, was observed swerving and crossing the double yellow line by then on-duty Alma Police Department Officer Wilkins.[2] Wilkins began pursuing McCaslin with his emergency lights on in attempt to stop him. He was soon joined by other officers in the pursuit, which at times reached speeds in excess of 100 miles per hour.[3] The officers attempted to stop the chase several times by boxing McCaslin behind a tractor trailer rig and, ultimately by police units, to which McCaslin responded by evading capture and eventually swerving off Interstate 540.

Defendants contend that McCaslin's vehicle was not disabled after it went off the road, while plaintiffs contend that McCaslin's truck went straight down an embankment on the north side of Interstate 540 and was not driven any further.[4]

About the time McCaslin's vehicle went over the embankment, officers approached McCaslin's vehicle. The officers contend that McCaslin then began driving out of the embankment moving quickly toward them, forcing them to seek protection and/or protect themselves by the use of deadly force, resulting in the shooting death of McCaslin by officer Wilkins.

Plaintiffs state that there is a genuine issue as to material fact as to the amount of time available for McCaslin to have driven toward the officers shortly before the fatal shot was fired by Wilkins. Plaintiffs also state that at no time was there sufficient cause for Wilkins to have begun firing his weapon.[5]

Defendants have now moved for summary judgment. It is argued that the shooting of McCaslin was not in violation of McCaslin's constitutional rights and further, that the defendant officers are shielded from individual liability by the doctrine of "qualified immunity." Defendants also submit that McCaslin's death, caused by force used in an effort to detain him, was reasonable for the purpose of protecting police officers and members of the public from death or serious physical injury. Finally, it is argued that judgment should be granted with respect to the state tort claims.

---

2. McCaslin was later determined to have had a blood alcohol far exceeding the legal limit at the time of the pursuit, and at the time of his death soon after.

3. One unit operated by Crawford County deputies Daymon Blount, hereinafter "Blount," with deputy Lloyd Lingo and with another unit operated by deputy Jerry Martin with deputy David Martin as passenger.

4. Plaintiffs rely on statements of a bystander who saw McCaslin's vehicle go over the embankment.

5. Defendants rely on statements of the officers present as well as findings of Arkansas State Police Investigator David Hyden. Plaintiffs rely on statements of a bystander who said that within only six or seven seconds after McCaslin's truck went over the north edge and embankment of Interstate 540 and out of sight of the bystander, gun shots began. Plaintiffs also state that officers Sharum and Moore's own statements indicate that both officers, as well as all others, were out of immediate danger before Wilkins fired any shots.

■ As a preliminary matter, the Court points out that the Supreme Court has held that an "official capacity" suit is not a suit against the official personally, for the real party in interest is the government entity of which the officer is an agent. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The majority of courts considering the issue of whether naming both the government entity and the official in his official capacity is redundant have concluded that in such a case there is in reality only one defendant. Suing the official in his or her official capacity is equivalent to suing the city. *Carnell v. Grimm,* 872 F.Supp. 746 (D.Haw.1994); *Doe v. Rains Independent School District,* 865 F.Supp. 375 (E.D.Tex. 1994); *Amati v. City of Woodstock,* 829 F.Supp. 998 (N.D.Ill.1993). In this case, both Wilkins and White have been named as parties in their individual and official capacities and the Court, in following the majority of courts on this issue, will therefore dismiss those claims as against Wilkins and White in their official capacities.

■ It is also appropriate to first consider whether Plaintiff has alleged a violation of a constitutional right before addressing the qualified immunity issue. The Supreme Court has held that "...the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis,* — U.S. ——, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); (*See also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)).

The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the import of the evidence, judgment

should not be granted. *Id.* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. However, the non-moving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### *Discussion.*

#### A. The § 1983 and Fourth Amendment Claim.

42 U.S.C. § 1983 provides a cause of action for any claimant whose federally protected rights have been violated by a state or local official or any other person acting under color of state law.

■ Municipal liability also may be imposed under § 1983 when the enforcement of a municipal policy, practice or decision of a final policy maker caused the deprivation of a federally protected right. *See Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992). In order to state a claim against a city, the plaintiff must allege facts showing: (1) that his harm was caused by a constitutional violation; and (2) that the city was responsible for that violation. *Id.* 503 U.S. at 120, 112 S.Ct. at 1066.

Defendants contend that the § 1983 claim as against the officers in their official capacities and as against the City of Alma must be dismissed because plaintiffs have failed to allege a constitutional violation. Plaintiffs respond that they have stated facts sufficient to show that the actions taken by the City of Alma and the defendant officers violated McCaslin's Fourth Amendment right to be free from unreasonable searches and seizures by the use of deadly force.

■ Plaintiffs allege their claim is based on the Fourth Amendment and the Supreme Court explained that while "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through

means intentionally applied." *Brower v. County of Inyo,* 489 U.S. 593, 596–597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)(quoted in *County of Sacramento v. Lewis,* supra at —U.S. ——, 118 S.Ct. at 1715).

In this case, there is no factual dispute that Wilkins' intended to pull the trigger on his weapon to stop McCaslin's progress in the pursuit. Therefore, the Plaintiff's assertion that the Fourth Amendment applies to this case is correct.

█ Defendants next contend that Wilkins and Chief White and the City of Alma were justified in the use of deadly force against McCaslin citing this Court to the objective reasonableness standard as set forth in *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985), and as applied in the Eighth Circuit case of *Cole v. Bone,* 993 F.2d 1328 (8th Cir.1993). In *Cole,* the Court found that the use of deadly force was objectively reasonable where a state police officer shot and killed a truck driver who was fleeing the police and the truck driver had eluded the police for several miles, traveling at high speeds through congested areas, forcing police and other cars off the road and showing no signs that he would give in to a road block or other tactic. Defendants say *Cole* is just like the case at bar while plaintiffs distinguish *Cole* by asserting that the decedent in *Cole* was still driving down the highway running people of the road at the time police shot him, while McCaslin, in this case, was off the highway and the chase was effectively over.

The Court can not agree with either the plaintiffs' or defendants' characterization that the facts are undisputed on the issue of when or if the chase of McCaslin was over. How and what transpired after McCaslin's truck went over the embankment is the essence of this case and there remains a genuine issue as to material fact as to what happened to McCaslin's truck when it went over the embankment and how the officers responded soon after, including whether there was a constitutional violation.

Considering the remaining pleadings, depositions, statements on file, together with affidavits, the moving party has not been able to show that there are no genuine issues as to the material facts and the defendants are not entitled to summary judgment. Given the objective reasonableness standard applicable to this case and the obvious fact based context of this case, the Court is, at this time, unwilling to grant summary judgment. However, if it becomes apparent that either the defendant City of Alma's or the defendant officers' culpability does not rise to the level necessary to find a violation of a constitutional right, this issue may be revisited.

**B. Qualified Immunity in General.**

As discussed above, this Court has determined that plaintiffs have established sufficient evidence to withstand defendants' motion for summary judgment on plaintiffs' § 1983 claim. Assuming the plaintiffs establish that any or all defendants, in fact, violated McCaslin's constitutional rights, the Court must consider whether Wilkins or White are entitled to summary judgment on the qualified immunity defense.

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), *quoting, Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

█ The question of whether a Defendant is entitled to qualified immunity is a question of law to be determined by the trial court. *J.H.H. v. O'Hara,* 878 F.2d 240 (8th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990). In deciding this issue, a court must consider the information upon which the official acted, although this is not to be confused with a review of the official's subjective intent. *Coffman v. Trickey,* 884 F.2d 1057, 1063 (8th

Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). A court must measure the objective reasonableness of a Defendant's conduct by reference to clearly established law. "No other 'circumstances' are relevant to the issue of qualified immunity." *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

■ The doctrine of qualified immunity shields officials acting only in their individual capacities. *Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). *See also W.B. v. Matula,* 67 F.3d 484, 499 (3rd Cir.1995). Any claims against the Defendants in their official capacities may not be defended against on the basis of qualified immunity. *Id.*

■ Immunity is appropriate if the Plaintiff does not allege the violation of a clearly established constitutional or statutory right. *Latimore v. Widseth,* 7 F.3d 709, 712 (8th Cir.1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1124, 127 L.Ed.2d 433 (1994).

> The mere assertion of such a right, however, will not be adequate: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus the defense still may be viable, even in the face of a clearly established and violated right, if the Defendant can demonstrate "the 'objective legal reasonableness' of the action assessed in the light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034 . . .

*Latimore,* 7 F.3d at 712. While a prior case need not address the precise factual situation facing the officials, the unlawfulness of their actions must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ A defense of qualified immunity is defeated if an official knew or should have known that his actions, taken within the sphere of official responsibility, would violate the constitutional rights of the plaintiff or if he took the action with the malicious intention to cause a deprivation of constitutional rights. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2738.

■ To withstand a motion for summary judgment on qualified immunity grounds, a civil rights Plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated Plaintiff's clearly established right. *Habiger v. Fargo,* 80 F.3d 289 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996).

42 U.S.C. § 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws that occur under color of state law." plaintiffs, by their Amended Complaint, claim defendants violated the rights of McCaslin under the Fourth Amendment. It must be determined whether Wilkins or Chief White are shielded from liability for their actions by the doctrine of qualified immunity.

■ In *Tennessee v. Garner, supra* at 471 U.S. 1, 105 S.Ct. at 1696, the Court states the standard for a seizure-by-shooting as objectively reasonable when "the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others." [6] Defendants assert

---

**6.** The Alma Police Department Firearms Policy states, in part, that "[a]n officer of the Alma Police Department may use his weapon in the performance of his duty for the following reasons:... B. To defend another person from death or serious injury... To effect the arrest or capture, or prevent the escape of·a person whom the officer knows or has reason to believe has committed a felony, when the crime for which the arrest is made, involves conduct including the use or threatened use of deadly force, or when there is substantial risk that the person to be arrested will cause death or serious physical injury if his apprehension is delayed... Such force may only be exercised when all reasonable alternatives have been exhausted and must be based only on the facts or what reasonably ap-

that Wilkins undisputedly acted reasonably under the circumstances by using deadly force against McCaslin because Wilkins had observed McCaslin driving fast and erratically, refusing to pull over when the officers flashed their lights and sounded their sirens, and at one point driving down the wrong side of the interstate into oncoming traffic. Additionally, Defendants contend that McCaslin's alleged attempts to run over officers and escape amounted to felonious behavior[7]. However, plaintiffs counter that there is not even sufficient evidence to establish McCaslin's intentions during the pursuit such that would rise to the level of felonious conduct and that officers' own statements indicate all were out of harm's way before Wilkins fired the fatal shot at McCaslin.

It is clear to the Court, as recited above, that there is a genuine issue as to material fact as to whether Wilkins, in shooting McCaslin, violated McCaslin's constitutional rights. Therefore, Wilkins is not entitled to qualified immunity.

▮ As to White, the Plaintiffs have failed to identify a dispute as to material fact sufficient to establish that any of White's conduct would have violated McCaslin's constitutional rights. It is undisputed that Chief White was not present when McCaslin was shot and even if White acted incompetently regarding Wilkins' training, the law is such that White is still entitled to qualified immunity. Therefore, the Court finds that White is entitled to the qualified immunity defense.

In conclusion, a careful review of the officers' affidavits and others' affidavits and the other evidence of record filed by the parties, as determined above, reveals sufficient contradictory statements as to make it impossible to assess with certainty the facts possessed by the officers at the time of the pursuit that led them to believe McCaslin was, in fact, going to harm the officers or others. It is precisely the disputed facts of the police pursuit and circumstances sur-

rounding Wilkins' shooting of McCaslin, as perceived by the officers and others, which are at issue and it will be necessary for the plaintiffs to show whether the defendants actions, or inactions, were reasonable under the circumstances.

As there is a substantial dispute about the facts in this case, particularly those surrounding the pursuit and ultimate death of McCaslin, a viable question of material fact does exist as to whether the defendant officers and the City of Alma acted reasonably under the circumstances. Therefore, with respect to the alleged violation of McCaslin's constitutional rights under the Fourth Amendment, actionable under § 1983, the defendant officer Wilkins is not entitled to summary judgment on the qualified immunity defense. In the same way, the defendants are not entitled to judgment on the plaintiffs' claim that defendants violated McCaslin's "rights and immunities" under the United States and Arkansas Constitutions.

**C. State Claims in Tort.**

▮ Also, for the above-stated reasons, this Court will deny the defendants' motion for summary judgment on the plaintiffs' wrongful death, negligence and outrage claims. The conflicting statements contained in the affidavits of officers and others and other evidence of record as to just what occurred on November 23, 1996, and as to whether the elements of the individual torts as enumerated will be met at all, show there is a genuine issue as to material fact.

*Conclusion.*

The conflicting evidence presented has made it impossible for the Court to determine with certainty the information possessed by defendants Wilkins, Chief White or the City of Alma, at the time the alleged violations occurred. The objective reasonableness of the actions taken by the defen-

---

pears to be the facts known to the officer at the moment he shoots."

7. Ark.Code Ann. § 5–54–125 makes it a felony where serious physical injury to any person occurs as a direct result of fleeing by means of any vehicle or conveyance, with "serious physical

injury" defined as physical injury that creates a substantial risk of death, causes protracted disfigurement, protracted impairment of health or loss of protracted impairment of the function of any bodily member or organ. Ark.Code Ann. § 5–1–102(19).

dants, if any, cannot be determined without first making a determination as to credibility. The plaintiffs have successfully raised genuine issues of material fact which preclude the grant of summary judgment based on the alleged constitutional violations and the state tort claims, as applied to defendants Wilkins, Chief White and the City of Alma. Therefore, defendants are not entitled to summary judgment. Except for the dismissal of the plaintiffs' claims as against Wilkins and White in their official capacities, the motion for summary judgment is DENIED.

IT IS SO ORDERED.