**UNITED STATES of America,
Appellee,**

v.

**Larry J. WEBER, Appellant.**

**No. 75–1007.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1975.

Decided June 25, 1975.

Rehearing and Rehearing En Banc
Denied July 16, 1975.

James R. Wyrsch, Kansas City, Mo., for appellant.

James C. England, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY and HENLEY, Circuit Judges, and REGAN, District Judge.*

HENLEY, Circuit Judge.

The defendant, Larry J. Weber, appeals from a judgment of conviction entered following his conviction by a jury on November 19, 1974 for conspiracy to manufacture and distribute a controlled substance.[1]. On December 20, 1974 he was sentenced to five years imprisonment to be followed by a two year special parole term.[2] We affirm the conviction.

## I.

The government's case against Weber consisted principally of evidence gathered by an informant named Robert Goewert. Goewert had been a chemistry instructor at the University of Missouri at Columbia before he was arrested on a drug charge. As a result, he lost his job and began working at an establishment in Columbia called the "Frame Shop." While working at the Frame Shop Goewert was contacted by the defendant Weber who proposed in early June, 1974 that Goewert assist him in the manufacture of illicit drugs. Goewert agreed, but then decided to become a "cooperating individual" with the government in the hope of obtaining a lenient sentence in his own drug case.

Between June 7 and July 11, 1974 Goewert kept in telephone contact with government agents. He informed them that Weber and two other individuals named Heath and Sullivan planned to set up a drug manufacturing laboratory in northern Missouri. According to Goewert, they would manufacture a drug called methamphetamine which consists in part of a substance called phenyl-2-propanone (P–2–P). In late June Weber and Goewert drove from Columbia to St. Louis where Weber borrowed $500.00 from Sullivan and purchased some laboratory equipment from a distributor. On July 10, 1974 Weber and Goewert returned to St. Louis expecting to purchase some P–2–P from Heath, but he could not be located. Federal agents surveilled this trip.

After Weber and Goewert returned to Columbia the following day, Goewert contacted federal agents and met special agent Wallace of the Drug Enforcement Administration at a motel in Columbia. Pursuant to Wallace's instructions, Goewert made a telephone call to Weber which was recorded with Goewert's consent by use of an induction coil and a tape recorder. During the conversation, Weber stated that he was returning to St. Louis to obtain the P–2–P. Goewert then went to his apartment with Wallace and received a telephone call from Weber. Weber stated that he was driving to Columbia and that Goewert should set up the laboratory which was located at a farmhouse. This conversation also was recorded with Goewert's consent.

Agents attached a transmitting device to Goewert's body and he proceeded to

---

* John K. Regan, United States District Court for the Eastern District of Missouri, sitting by designation.

1. 21 U.S.C. § 841(a)(1) states:

    Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
    21 U.S.C. § 846 states:
    Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(b)(1)(B) provides:

    . . . Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior [narcotics] conviction, impose a special parole term of at least 2 years in addition to such term of imprisonment . . . ..

the farmhouse. The laboratory was set up, and at approximately 11:00 p. m. on July 11 Weber and Heath arrived with the P–2–P. Officers could hear the parties' conversations by means of a transmitter, and when Goewert made a prearranged signal they raided the farmhouse. Upon arrival officers noticed two individuals leaving the basement through an outside door. Agent Wallace entered the basement without knocking or announcing his purpose and observed in plain view some drug manufacturing equipment. Those items were seized and the defendant and his cohorts were arrested.

Throughout this period, Goewert provided Weber with much of the laboratory equipment needed to produce methamphetamine. Some of this equipment was purchased while the remainder had been stolen by Goewert from the University of Missouri during his tenure as an instructor. Goewert also provided Weber with chemical formulas necessary to produce methamphetamine and gave Weber an essential ingredient called methylamine hydrochloride. Goewert made heavy personal use of drugs while an associate of Weber.

## II.

■ The defendant's primary contention on appeal is that Goewert, acting at the behest of the government, became so actively involved in the conspiracy that fundamental fairness bars the government from invoking judicial process to obtain a conviction.[3] He relies principally on United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

The defendants in Russell were convicted of unlawfully manufacturing and selling methamphetamine. The evidence showed that a government informant had supplied the defendants with P–2–P. On appeal, Russell argued (1) that he had been entrapped as a matter of law

and (2) that a criminal prosecution would violate due process of law since the informant supplied an indispensable means to the commission of the crime that could not have been obtained elsewhere. The Ninth Circuit reversed the conviction for "an intolerable degree of governmental participation in the criminal enterprise." United States v. Russell, 459 F.2d 671, 673 (9th Cir. 1972). The Supreme Court reversed the court of appeals and held that the traditional entrapment defense focuses solely on "the intent or predisposition of the defendant to commit the crime." 411 U.S. at 429, 93 S.Ct. at 1641. The degree of governmental participation in the criminal activity was deemed to have no significance independently of the question of predisposition. Accordingly, the conviction was affirmed since the trial court had given a standard predisposition entrapment instruction.

The Russell court refused to pass on the defendant's due process argument on the ground that he had failed to meet the standards of his own proposed constitutional rule. The ingredient supplied by the informant, P–2–P, was legally obtainable and hence the informant had not supplied an indispensable means for commission of the crime which could not be obtained elsewhere. The Court stated:

While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . . the instant case is distinctly not of that breed. Id. at 431–32, 93 S.Ct. at 1643.

We believe that Russell controls defendant Weber's case, and we refuse to reverse his conviction. As in Russell, the trial court gave a standard predisposition entrapment instruction. As in Russell,

---

**3.** The defendant assigns numerous other points of error. We find these assignments to be without merit on the basis of our opinion in the companion case of United States v. Weber, 8 Cir., 518 F.2d 984.

the informant supplied the defendant with an essential, legally obtainable ingredient of methamphetamine. Unlike *Russell*, the informant here supplied the defendant with some laboratory equipment needed to manufacture the drug, but this additional participation in the criminal enterprise does not persuade us the government's law enforcement techniques violated "fundamental fairness, shocking to the universal sense of justice."

### III.

The defendant challenges the seizure of laboratory equipment found in the basement of the farmhouse following his arrest. We reject this challenge.

On the basis of Goewert's information, the recorded telephone conversations, and the transmissions received by the agents on the night of the arrest, the officers had probable cause to believe that the defendant and his associates were in the process of committing a crime. Therefore, the agents acted reasonably in arresting the defendant without first obtaining a warrant. Likewise, the officers were justified in making a quick and cursory search of the basement in order to ascertain whether any other individuals were hiding. *United States v. Blake*, 484 F.2d 50, 57 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Briddle*, 436 F.2d 4, 7 (8th Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 824 (1971). While in the basement, they could seize items in plain view, and these items could be introduced into evidence at trial. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Affirmed.