**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-1720MN

United States of America,　*
　　　　　　　　　　　　　*
　　　　　Appellee,　　　*
　　　　　　　　　　　　　* On Appeal from the United
　　v.　　　　　　　　　 * States District Court
　　　　　　　　　　　　　* for the District of
　　　　　　　　　　　　　* Minnesota.
Jerry Lee Cunningham,　 *
　　　　　　　　　　　　　*
　　　　　Appellant.　　 *

_____

Submitted:　October 21, 1997
Filed:　　January 13, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and
　　　HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

Jerry Lee Cunningham was convicted of drug and weapons charges after a jury trial. He appeals his conviction on four principal grounds: illegal search and seizure, violation of his right to counsel, failure of the District Court to conduct a hearing to examine whether improper jury contact occurred, and improper admission of his prior record in light of the Supreme Court's decision in Old Chief v. United States, ___ U.S. ___, 117 S.Ct. 644 (1997). We affirm the convictions. There was an Old Chief error, but we think it was harmless.

I.

On August 6, 1996, police in Brooklyn Center, Minnesota, received a 911 call from an apartment in Brooklyn Center. The caller identified herself as Lachonda Williams and said she was being held against her will. When the police arrived at the apartment, they were met at the door by Jerry Lee Cunningham, the defendant, who attempted to prevent the police from entering the apartment. At trial, one of the officers testified that he could hear a woman crying inside the apartment. The police explained that it was necessary for them to enter the apartment to investigate the call. The defendant refused to permit the officers to enter the apartment, and he was arrested for obstructing legal process.

Once inside, the police observed a woman, later identified as Sheila Hatchett, sitting in a chair on top of another woman, later identified as Ms. Williams, who was holding a young child. Ms. Williams got out from underneath Ms. Hatchett, and the police took Ms. Williams into a rear bedroom to interview her. Ms. Williams told the police that Mr. Cunningham, who is her father, had assaulted her because he believed she had stolen $5,000 in cash from him. Ms. Williams also told the police that she had seen a large amount of crack cocaine in the apartment that day. She told the police that the defendant supplied drugs to Ms. Hatchett, that he had sold drugs at a bar in North Minneapolis, and that he carried weapons when he did so. While interviewing Ms. Williams in the bedroom, the police observed rolling papers and currency. Ms. Williams told the police that

she had heard Ms. Hatchett tell the defendant that the police had been called, and that Ms. Hatchett had moved the crack cocaine and guns from the apartment to her car. Ms. Williams identified the car for the police, and it was impounded and towed to the police department. The police later obtained a warrant and searched the car, finding 142 grams of crack cocaine, 22.8 grams of powder cocaine, and three handguns.

Later, at the police station, Mr. Cunningham was informed of his <u>Miranda</u> rights

before being interviewed by a detective. Shortly after the interview began, the defendant told the detective that he wanted to contact an attorney. The detective placed several calls for the defendant in an effort to locate his attorney. According to the detective, the defendant made a series of arguably incriminating statements to the persons on the telephone and to the detective himself, who had remained in the room.[1] The detective testified that the defendant said, among other things, that he could "do five to seven years standing on his head"; that if there was any "heat" to be taken he would take it; that he and another person were the last ones to use the car; and that, because the streets weren't safe, he always carried a gun. In addition, the detective testified that when he responded to the defendant's statement that he could do five to seven years standing on his head by saying that he must not be familiar with federal sentencing practices related to drug and weapons charges, the defendant said, "Oh yeah, the guns in the car."

The police later searched the apartment pursuant to a warrant. This search led to the seizure of ammunition, several items of drug paraphernalia with crack and powder cocaine residue, and documents linking the defendant to the car and the apartment.

A jury convicted the defendant of possession of

---

[1] There is no evidence that Mr. Cunningham asked for privacy while making the calls. According to the detective, there was no private telephone available, but defendant would have been given a private place in which to meet with his lawyer if he had reached the lawyer by phone.

cocaine base with intent to distribute (Count I) in violation of 21 U.S.C. § 841(b)(1)(A), conspiracy to possess with intent to distribute cocaine base (Count II) in violation of 21 U.S.C. § 846, being a felon in possession of a firearm (Count IV) in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm with an obliterated serial number (Count VII) in violation of 18 U.S.C. § 922(k). The jury could not reach a verdict on another felon-in-possession-of-

a-firearm count and two other counts alleging possession of a firearm with an obliterated serial number, and the District Court declared a mistrial as to those counts. The Court sentenced Mr. Cunningham to 360 months on Counts I and II (the bottom of the Guidelines range), 120 months on Count IV, and 60 months on Count VII, all terms to run concurrently. The Court also ordered five years' supervised release and a special assessment of $400. This appeal follows.

## II.

The Fourth Amendment protects citizens from unreasonable searches and seizures. Mr. Cunningham argues that this right was violated when the police entered all of the rooms of the apartment and observed the rolling papers and currency in the rear bedroom. This evidence led, at least in part, to the impoundment and search of the car, which in turn supported the warrant police obtained to search the apartment. Defendant argues that the evidence seized should be suppressed because its discovery was the result of a Fourth Amendment violation.

Although we review the facts supporting a District Court's denial of a motion to suppress for clear error, we review de novo the legal conclusions that are based upon those facts. See United States v. Ornelas, ___ U.S. ___, ___, 116 S.Ct. 1657, 1663 (1996); United States v. Williams, 981 F.2d 1003, 1005 (8th Cir. 1992). When applying this standard, we give deference to the fact finder, who had an opportunity to observe the demeanor and credibility of the witnesses. United States v.

<u>Wallraff</u>, 705 F.2d 980, 987 (8th Cir. 1983).

A warrantless search may be justified by exigent circumstances, which exist where the safety of law enforcement officers or others is threatened. <u>Warden v. Hayden</u>, 387 U.S. 294, 298-99 (1967). The defendant acknowledges that the police had a right to enter the apartment to investigate the 911 call but argues that there was no basis for entering every room of the apartment, since he had already been arrested,

and no other danger was present. The Supreme Court has said, however, that the Fourth Amendment permits a properly limited protective sweep in connection with an in-home arrest if an officer reasonably believes that the area to be swept harbors an individual posing a danger to those at the arrest scene. Maryland v. Baie, 494 U.S. 325, 337 (1990). The officer's belief must be based on specific and articulable facts. Id. Following Mr. Cunningham's arrest, the police identified Ms. Williams as the 911 caller and walked through the apartment to identify any threat to themselves or Ms. Williams. The Magistrate Judge,[2] finding that the officers had grounds to conduct a cursory inspection of the apartment for any additional suspects who might have been restraining Ms. Williams against her will, held that the search of the apartment did not violate defendant's Fourth Amendment rights because the officers had a legitimate reason to be where they were. We believe this conclusion, adopted by the District Court,[3] was correct. The officers' protective sweep of the apartment was not unreasonable and did not violate the Fourth Amendment.

Mr. Cunningham also argues that the search of the car and the apartment violated his Fourth Amendment rights. Both searches were conducted pursuant to warrants, and there was ample evidence to support the warrants. In addition to the testimony of the officers who sought the warrants, there was Ms. Williams's statement that she had seen a large amount of cocaine inside the apartment, and

---

[2] The Hon. John M. Mason, United States Magistrate Judge for the District of Minnesota.

[3] The Hon. Richard H. Kyle, United States District Judge for the District of Minnesota.

-8-

that it had been moved, along with the currency and guns, to the car.  The defendant argues the police had little more than a suspicion that the car contained evidence related to a crime and should not have relied on Ms. Williams's statement without corroborating it because she was motivated to retaliate against her father for assaulting her.  This argument is without merit.  Although police officers must remain alert to the possibility that a witness is not telling the truth,

we believe it was reasonable for the officers to rely on her statements.

                                III.

Mr. Cunningham next argues that testimony heard by the jury about statements he made to the detective while they were attempting to contact defendant's attorney violated his right to counsel.  For the reasons that follow, this argument is also without merit.

The crux of the argument is that Robert Dirks, the detective who interviewed the defendant, prodded the defendant into incriminating himself after he had invoked his Miranda right to counsel.  Mr. Dirks did this, according to the defendant, by dialing the telephone for the defendant, by remaining in the booking room with him while he spoke to several people in an effort to locate his attorney's telephone number, and by saying several things to the defendant between the calls.  The defendant relies on Rhode Island v. Innis, 446 U.S. 291 (1980), which held that, in addition to express questioning, interrogation means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301 (footnotes omitted).

There is disagreement on the question of whether Mr. Cunningham made an unequivocal request to speak to an attorney.  He argues, and the Magistrate Judge found, that he did.  The government disputes this finding, arguing that, at most, what the defendant said to the detective was that he had requested an attorney earlier.  We need not decide whether the defendant made an unequivocal

request for an attorney. We know that the detective attempted to assist Mr. Cunningham in locating an attorney, so we will assume, for purposes of analysis, that Mr. Cunningham's request was sufficient to invoke the right to counsel.

The central issue is whether Detective Dirks's statements to the defendant amounted to impermissible interrogation following a request for an attorney by a defendant in custody. The detective made several statements to the defendant while they sought to locate the defendant's attorney. The defendant specifically cites two statements by the detective as evidence that he was trying to engage the defendant in conversation after he had invoked his right to counsel. The first is the detective's statement, made immediately before the defendant reached Ms. Hatchett in an effort to get the attorney's telephone number, that the detective wanted to interview her. The detective testified that the defendant, in the course of telling Ms. Hatchett that the detective wanted to interview her, told Ms. Hatchett that she was not in trouble, that Mr. Dirks was "cool," and that she should get an attorney and come in to see Mr. Dirks. Mr. Dirks testified that the defendant also said to Ms. Hatchett during this telephone call that he could "do five to seven years standing on his head," that he would "take the heat," and that he and "Hassan" were the last ones to have the car.

Mr. Dirks's second statement was made while the two were waiting for the attorney to call back. The defendant said his daughter had stolen money from him and that he was going to "do" her and make big headlines. He also repeated his earlier comment about being able to "do five to seven years standing on his head." Mr. Dirks responded to this statement by saying that the defendant had obviously not been through the federal system, because five to seven years would not be consistent with the penalties for weapons and drug violations. The defendant responded, "Oh yeah, the guns in the car." Mr. Dirks, who testified to all of the incriminating statements cited,

testified that he had not yet told the defendant about the guns having been found during the search of the car earlier that day.

We do not believe it is reasonable to infer that Mr. Dirks made these two statements because he knew they would likely prod the defendant into incriminating himself. Further, we find nothing in the record to suggest that Detective Dirks should have known that his statements were reasonably likely to elicit an incriminating

response from Mr. Cunningham. In the first statement, Mr. Dirks simply asked the defendant to pass along a message to Ms. Hatchett. In the second statement, Mr. Dirks was responding to something the defendant had said. The defendant's statements were not the product of police interrogation. Mr. Cunningham initiated the conversation, and his statements were volunteered. The detective merely listened to him, and nothing prohibits the use of the defendant's statements against him.

IV.

Defendant's next argument is that the District Court abused its discretion by refusing to conduct a hearing into possible improper jury contact and by preventing the defense from conducting its own investigation into the alleged improper contact. Shortly after the jury began its deliberations, defendant's counsel was approached by a man in the hallway outside the courtroom who asked whether he was involved in the trial. Counsel said that he was one of the attorneys, and the man asked him whether the jury had reached a verdict. Counsel told the man that the jury had just begun deliberating, and the man said he was the husband of one of the jurors and was there to pick her up. The lawyer told the man he could not discuss the case further and reported the incident to the District Court. Counsel for the government informed the Court that the same man had earlier approached one of the police officers who testified, introduced himself as the husband of one of the jurors, and told the officer that he knew the officer's father.

The defendant asked the District Court to hold an immediate hearing to examine whether any contact with a juror had occurred. Under Remmer v. United States, 347

U.S. 227 (1954), a district court may hold a hearing to determine whether any private communication, contact, or tampering with a juror has occurred in a criminal case and, if so, whether such incident has prejudiced the defendant.  Improper contact with a juror about a matter pending before the jury is presumptively prejudicial.  Id. at 229.  The District Court refused to hold a hearing, but instructed the jurors that they were not

to discuss the case with others, including family members. Following the verdict, defendant renewed his request for a Remmer hearing. The District Court again denied the request for a hearing, but allowed the defendant to submit written motions.

Counsel for the defendant submitted an affidavit recounting the events involving the juror's husband and citing several grounds in support of his motion for a hearing or new trial. Defendant argued that a juror's spouse who is aggressive enough to approach and initiate a conversation with a government witness could have had undue and extraneous contact with his juror wife during the two to two-and-a-half-hour drive the couple made twice a day to and from the courthouse. He also argued that, since the juror's spouse claimed to have known the government witness's father, it was likely that the juror herself knew the same person, and this could have tainted the juror's perception of the officer's testimony to the prejudice of the defendant or, perhaps, meant that the juror had concealed this fact during voir dire. Finally, defendant argued that the presence of the juror's spouse in and around the courtroom may have imparted a sense of urgency to the juror to reach a decision quickly.

The District Court, finding the defendant had not established that there had been any improper contact with the jury, held that the defendant was not entitled to a hearing or a new trial. The Court wrote that the defendant's allegations were "mere speculation" and that no evidence had been produced that showed that "any improper contact [had] occurred with any juror." United States v. Jerry Lee Cunningham, No. 3-96-105, Mem. and Order at 5 (D. Minn., Dec. 30, 1996). We review a district court's denial of a Remmer hearing and a motion

for a new trial for abuse of discretion.  <u>United States v. Caldwell</u>, 83 F.3d 954, 955 (8th Cir. 1996).  Here, defendant has not established whether any contact even occurred, much less whether the alleged contact was in any way improper, and he has offered no credible evidence that the District Court abused its discretion in denying the motion for a hearing or a new trial.

V.

Mr. Cunningham also argues that the District Court abused its discretion when it permitted the government to introduce evidence of the nature of three prior felonies after he had offered to stipulate to his status as a felon for purposes of the felon-in-possession-of-a-firearm count. Citing then-current law, the Court denied the defendant's motion in limine that sought to require the government to accept the stipulation and to prevent it from introducing evidence of defendant's convictions for attempted murder, armed robbery, and burglary. At trial, the government offered certified copies of each conviction. After defendant was convicted, the Supreme Court decided Old Chief v. United States, ___ U.S. ___, 117 S.Ct. 644 (1997). Old Chief held that a district court abuses its discretion when it rejects a defendant's offer to stipulate his status as a felon under a Section 922(g)(1) offense and instead admits the full record of a prior judgment of conviction, if evidence concerning the name or nature of the prior conviction increases the risk of a verdict tainted by improper considerations. Id. at 647. The government does not dispute that the District Court abused its discretion by admitting evidence of Mr. Cunningham's prior felony convictions (though the Court's action was, at the time, fully consistent with our cases). The government does argue, however, that the error was harmless, and this Court has held that harmless-error analysis is appropriate where a district court has abused its discretion in violation of Old Chief. See United States v. Horsman, 114 F.3d 822, 827 (8th Cir. 1997). The issue we must decide, therefore, is whether the error was harmless.

We recently held in United States v. Blake, 107 F.3d

651 (8th Cir. 1997), that reversal is required if it cannot be concluded that the jury may not have been substantially swayed by the improperly admitted evidence. Id. at 653.  The government asserts that the evidence against Mr. Cunningham was overwhelming.  We have read the entire transcript of the trial.  The evidence was very strong.  Crack and powder cocaine and three semiautomatic weapons with obliterated serial numbers were found

in the car.  Drug paraphernalia containing cocaine residue were found in the apartment. Currency, ammunition, and documents linked Mr. Cunningham to the apartment and the car.  There was Ms. Williams's testimony.  There were the defendant's own incriminating statements.  And Mr. Cunningham's fingerprint (but no one else's) was found on one of the bags of crack cocaine.  It is our opinion that the Old Chief error was harmless.

VI.

Oral argument in this case was heard on October 21, 1997.  On December 18, 1997, Mr. Cunningham filed a motion requesting leave to file a supplemental brief.  He asks us to direct his counsel to brief two new issues, neither of which has previously been raised, either below or in this Court, or to grant him leave to brief them pro se.  He also moves us to hold this appeal in abeyance for the time it will take for the two new issues to be briefed by both sides.  These motions are denied.  This case has been fully briefed and argued.  The time for filing briefs is long past.  We have already allowed the filing of one set of supplemental briefs (raising the Old Chief issue).  Our action is without prejudice to Mr. Cunningham's right to file a petition for post-conviction relief under 28 U.S.C. § 2255.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT