Jesse and Shelba LYLES, Plaintiffs,

v.

CITY OF BARLING; Matthew Lamora; in his individual and official capacities; Corporal Larry Merrill; in his individual and official capacities; Captain James Hamilton, in his individual and official capacities; Chief Myron Lamora, in his individual and official capacities, Defendants.

No. 97–2275.

United States District Court, W.D. Arkansas, Fort Smith Division.

June 26, 1998.

Donnie Rutledge, Lisle Law Firm, P.C., Springdale, AR, for Plaintiffs.

Gregory T. Karber, Pryor, Barry, Smith, Karber & Alford, PLC, Fort Smith, AR, for Defendants.

### MEMORANDUM OPINION

DAWSON, District Judge.

This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Rule 12(c), Fed.R.Civ. Pro and Motion for Summary Judgment under Rule 56, Fed.R.Civ.Pro filed on February 18, 1998.[1] As the motion incorporates evi-

---

1. Plaintiffs, Jesse and Shelba Lyles, filed this action on November 24, 1997. Defendants filed an Answer on December 9, 1997. After the motion to dismiss and for summary judgment was filed, plaintiffs filed a Motion to Amend the Complaint on April 10, 1998 to which the Defendants did not object. An Order granting the motion to amend was entered on May 7, 1998.

dence outside the pleadings in the form of affidavits and other documentary evidence, the Court will treat it as a Motion for Summary Judgment and analyze the issues as provided in Rule 56.[2]

The Second Amended Complaint is filed under the provisions of 42 U.S.C. § 1983 contending that Defendants' actions on the night of January 3, 1997 violated their Fourth Amendment right to be free from unreasonable searches and seizures, and their Fourteenth Amendment right to be free from the deprivation of property without due process of law. Plaintiffs also assert two claims based on state law. First, that the actions of the Defendants in allegedly taking Plaintiffs' personal property without basis or justification constitutes conversion under Arkansas law, and secondly, that the Defendants' actions violated Ark.Code Ann. § 16–123–105 and Art. 2 § 15 of the Arkansas Constitution. Plaintiffs seek compensatory and punitive damages as well as declaratory and injunctive relief.

Jurisdiction is proper under the general federal question statute, 28 U.S.C. § 1331.

### Background.

On January 3, 1997, Plaintiffs Jesse and Shelba Lyles resided at 1901 Fort Street, # 103, in the City of Barling. At that time, Brian Hodges and Defendants, Matthew LaMora, Corporal Larry Merrill, Captain James Hamilton and Chief Myron LaMora, were all law enforcement officers with the City of Barling, Arkansas.

Plaintiff Jesse Lyles was formerly married to Sharline Lindsey. On or about March 6, 1986, the Chancery Court for Clay County, Arkansas entered an order requiring plaintiff to pay child support. Over the years, Jesse Lyles became seriously delinquent in pay-

ment of the obligated child support payments, and he was found to be in willful contempt of court on more than one occasion.

On May 31, 1996 Sharline Lindsey caused to be filed in the Clay County Chancery Court a Petition for Contempt and Petition to Incarcerate Defendant [Jesse Lyles]. A hearing on the petition was set, and on August 7, 1996 the attorney for Sharline Lindsey filed a Proof of Service certifying that a Notice of Hearing had been served on Jesse Lyles by delivering a copy to his agent via certified mail, return receipt requested.[3] By order signed August 10, 1996, the Chancery Judge found that Jesse Lyles had been duly served by Summons in accordance with Arkansas law and that he did not appear at the hearing. The Chancellor went on to find Jesse Lyles in willful contempt of prior orders and sentenced him for a period of sixty days in the Clay County Detention Center. The order directed "any and all law enforcement authorities" to pick up Jesse Lyles and place him in the Clay County Detention Center.

This Order eventually found its way to the "day book" kept by the Barling Police Department. The "day book" is a system for notifying police officers of outstanding warrants. It was during an attempt to execute on the Order that, on the evening of January 3, 1997, Officer Brian Hodges[4] and Defendants, Officer Matthew LaMora, Corporal Larry Merrill, and Captain James Hamilton converged at the home of Plaintiffs, Jesse and Shelba Lyles.

Also on January 3, 1997 and prior to the arrival of the officers, Plaintiffs left their residence to travel to Jonesboro in order to contest the Order signed August 10, 1996.

A second motion to amend the complaint was filed on May 12, 1998. The second motion to amend was granted over defendants' objection.

**2.** By way of their response to the motion, plaintiffs requested additional time to engage in discovery under Rule 56(f). However, it has been more than sixty days since the response was filed, and plaintiffs have submitted no additional evidence to support their position. Plaintiffs have filed a first amended complaint and a second amended complaint.

**3.** A copy of the "green card" attached to the proof of service showed that the certified letter was addressed to Jesse Lyles, 102 Anderson Street, Brookland, Arkansas 72417 and signed for by Linda Polston on August 1, 1996.

**4.** Brian Hodges is not a defendant in this case and is no longer employed by the Barling Police Department. Additionally, Brian Hodges is the plaintiff in another case now pending before this court: *Brian Alan Hodges v. City of Barling, et al.* 98–CV–2009.

On or about January 6, 1997, Jesse Lyles was successful in having the Order recalled.

At this point, there exists conflicting evidence concerning who called the officers to the residence; the order in which the several officers arrived; who said what to whom regarding why it was believed the Plaintiff Jesse Lyles was inside the residence; and what events took place once the officers entered the residence.

According to the plaintiffs, whose version of the events is supported by the Affidavit of Brian Hodges, on January 3, 1997 Officer Matthew LaMora was the first to arrive at the residence and attempt to execute the body attachment order. Officer LaMora requested assistance from the other officers over the radio. Officer Hodges, Captain Hamilton and Corporal Merrill responded and arrived separately, but at about the same time. Upon arriving at the scene, Officer LaMora told Officer Hodges that he believed Mr. Lyles was inside, although he had not actually seen Mr. Lyles. Receiving no response to Officer LaMora's knock on the door, LaMora and Hamilton began beating on the exterior doors and walls of the trailer with their flashlights.

Officer Hodges avers that Officer LaMora asked Captain Hamilton whether it would be permissible to enter the trailer and forcibly remove Mr. Lyles. Captain Hamilton asked LaMora whether he had seen Mr. Lyles in the trailer, and LaMora said that he had not. Hodges claims Captain Hamilton did not think the officers should enter the trailer.

Officer Hodges then asked a neighbor named Martha, who was in the trailer in front of the Lyles, whether Mr. Lyles was home. The neighbor informed him that she did not know, but that she had called the Barling Police Department when she saw that the truck was parked beside the trailer. Hodges also states that Martha told him that there was often a small red car parked beside the trailer, but that it had recently departed. This information was reported to Captain Hamilton. Officer Hodges denies seeing or hearing anything inside the trailer on the night in question, and he denies telling any of the other officers that he had seen or heard anything.

Eventually, Captain Hamilton radioed Chief Myron LaMora for permission to enter the trailer by force and execute the warrant. After checking on the validity of the warrant, Chief LaMora told the officers to proceed. Officer Hodges contends that this permission was given without first inquiring as to whether the officers suspected Lyles was inside the trailer.

While Officer Matthew LaMora attempted to gain entry to the trailer by cutting a screen and opening a window, Captain Hamilton used a Leatherman tool belonging to Officer Hodges to pry on the door and door frame until it gave way. Officer Hodges was the first to enter the trailer and he ran through the kitchen, the living room and the master bedroom. It did not appear to him that anyone was home. While in the master bedroom, he looked inside the closet and then closed the doors. He observed the bedroom was neat, with the bed made and the dresser drawers closed. He then walked out into the kitchen where Captain Hamilton was going through mail on the desk, and Officer LaMora was going through some papers on a shelf. Corporal Merrill was in the smaller bedroom, and Officer Hodges went in to see Merrill looking through a small closet.

When Hodges left the smaller bedroom he went back into the master bedroom and passed by Captain Hamilton who was on his way out of the master bedroom. Officer Hodges observed Officer LaMora inside the master bedroom, and at this time Officer Hodges noticed that the bed sheets had been pulled up at the sides and clothes were hanging out of the open dresser drawers. The closet doors were also opened, and a small glass box on top of the dresser had been moved and was open. When Officer Hodges asked Officer LaMora what he was doing, Officer LaMora replied that he was looking for drugs.[5]

Officer Hodges asserts that Officer LaMora took a wedding picture of the plaintiffs explaining that the picture was needed so

---

5. The second amended complaint alleges additional facts regarding the conduct of Officer La-

Mora, however, the affidavit of Officer Hodges does not contain these

that the officers would know what Mr. Lyles looked like.

According to Officer Hodges, upon leaving the residence, Captain Hamilton admitted to Hodges that the front door would not close properly because it was broken. Captain Hamilton then had the idea of looking for Jesse Lyles under the trailer, so Officers LaMora and Hodges pulled away the skirting and looked underneath. No one was there. The search took about forty-five minutes from start to finish.

The Defendants' version of the events is markedly different. According to the Affidavits of Officer Matthew LaMora, Officer Larry Merrill, and Officer James Hamilton, each was contacted over the radio by Officer Hodges and asked to assist in serving a warrant on Jesse Lyles. Upon arriving at the scene, each officer was advised by Officer Hodges that Mr. Lyles was inside the residence but refusing to answer the door. Each of these officers states in his affidavit that, after knocking on the door, a decision was made to enter the residence in order to effectuate service of the "warrant", and the residence was entered without causing any damage. None of these affidavits refers to a radio call to Chief LaMora for permission to forcibly enter the trailer. Each states that a short search of the premises was conducted from which it was determined that Mr. Lyles was not home. Each denies that anything was taken from the residence or that anything was damaged. Each of these officers avers that he acted in good faith with the belief that Mr. Lyles was present in the residence.

The Affidavit of Matthew LaMora states that upon arriving at the scene, Officer Hodges told him that "the hood of Mr. Lyles' vehicle was still warm from having been driven, that he could hear movement in the residence, and; that he had seen a light being turned on and off. Captain Hamilton arrived at the scene and was given the same information by Officer Hodges." The affidavit also states, "We then opened the skirting around the trailer to check to see if Mr. Lyles was hiding under the trailer."

In his sworn statement, Corporal Larry Merrill states that he personally felt the hood of the vehicle at the residence and found it was still warm. He also believed he heard movement inside the trailer while he was knocking on the door.

Captain James Hamilton provides additional information. In his affidavit he states, "Officer LaMora was present while Officer Hodges explained that he had been watching the trailer hoping to find Mr. Lyles. Officer Hodges had passed by a short time before and there were no vehicles there. When he came back by a couple of minutes later the suspect's vehicle was there. Officer Hodges stated that he checked the hood of the truck and that it was warm. Officer Hodges said he then went up to the trailer and as he approached a light was turned off. He also stated that when he knocked on the door he could hear footsteps across the floor of the trailer. Officer Hodges also advised that he had confirmed the warrant through Sebastian County Sheriff's Office." According to the statement of Officer Hamilton, Officer Merrill arrived after Officers LaMora and Hamilton. Officer Hamilton avers that he felt the hood of the truck and found it to be warm. Officer Hamilton also states, "At no time was there any damage done to the skirting around the trailer or was any removed as indicated in the Complaint."

Plaintiffs claim that when they returned home, they discovered that the skirting had been torn away from beneath the mobile home and that several pieces of property were missing, including a diamond necklace Shelba Lyles kept in the jewelry box on top of the dresser and two bottles of a prescription medication called Diazepam.

Defendants have now moved for judgment on the pleadings and summary judgment. It is argued that the entry into the Plaintiffs' residence and the ensuing search were not in violation of Plaintiffs' constitutional rights, and that the Defendant officers are shielded from liability by the doctrine of "qualified immunity". Defendants also submit that any damage caused by the use of force to gain entry into the residence was reasonable for the purpose of executing the valid search warrant and/or that the Plaintiffs cannot specifically identify the officer or officers re-

sponsible for the damage. In addition, it is argued that the motion should be granted with respect to the missing property because Plaintiffs cannot specifically identify the officer or officers responsible, nor is there any evidence concerning the existence of a conspiracy between the defendants to deprive the Plaintiffs of their property.

█ The filing of the Second Amended Complaint may dispose of several of the issues raised in the defendants' motion. With the exception of qualified immunity, the Court will not consider these issues until advised by the parties whether the filing of the Second Amended Complaint requires a new motion be filed. The resolution of the qualified immunity issue, however, should be addressed as soon as possible because discovery should not be allowed until this threshold question is resolved. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### *Discussion.*

### A. Qualified Immunity in General.

█ "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), *quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

█ The question of whether a defendant is entitled to qualified immunity is a question of law to be determined by the trial court. *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990). In deciding this issue, a court must consider the information upon which the official acted, although this is not to be confused with a review of the official's subjective intent.

*Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). A court must measure the objective reasonableness of a defendant's conduct by reference to clearly established law. "No other 'circumstances' are relevant to the issue of qualified immunity." *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

█ The doctrine of qualified immunity shields officials acting only in their individual capacities. *Brandon v. Holt*, 469 U.S. 464, 472–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). *See also W.B. v. Matula*, 67 F.3d 484, 499 (3rd Cir.1995). Any claims against the defendants in their official capacities may not be defended against on the basis of qualified immunity. *Id.*

█ Immunity is appropriate if the plaintiff does not allege the violation of a clearly established constitutional or statutory right. *Latimore v. Widseth*, 7 F.3d 709, 712 (8th Cir.1993), *cert. denied*, 510 U.S. 1140, 114 S.Ct. 1124, 127 L.Ed.2d 433 (1994).

The mere assertion of such a right, however, will not be adequate: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus the defense still may be viable, even in the face of a clearly established and violated right, if the defendant can demonstrate "the 'objective legal reasonableness' of the action assessed in the light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034 . . .

*Latimore*, 7 F.3d at 712. While a prior case need not address the precise factual situation facing the officials, the unlawfulness of their actions must be apparent in light of preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

█ A defense of qualified immunity is defeated if an official knew or should have known that his actions, taken within the sphere of official responsibility, would violate

the constitutional rights of the plaintiff or if he took the action with the malicious intention to cause a deprivation of constitutional rights. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2738.

■■■ To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right. *Habiger v. Fargo*, 80 F.3d 289 (8th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996).

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

42 U.S.C. § 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws that occur under color of state law." Plaintiffs by their Second Amended Complaint claim the officers and Chief LaMora violated their rights under the Fourth and Fourteenth Amendments. It must be

determined whether the police officers and Chief LaMora are shielded from liability for their actions by the doctrine of qualified immunity.

## B. The Unreasonable Search and Seizure.

**1. The entry into the residence.** Plaintiffs claim that their Fourth Amendment rights to be free from unreasonable searches and seizures were violated when the officers entered their residence for the purpose of executing the body attachment order which is referred to as a "misdemeanor arrest warrant".[6] With respect to this issue, the Defendants base their motion for summary judgment on the argument that clearly established law permits law enforcement personnel to enter a residence for the purpose of executing an arrest warrant and that their actions were objectively reasonable in reference to the law.

■■■ A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant. *See Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388–89, 63 L.Ed.2d 639 (1980); *U.S. v. Risse*, 83 F.3d 212 (8th Cir.1996); *Washington v. Simpson*, 806 F.2d 192 (8th Cir.1986).

■■■ The officers executing the arrest warrant must have a *"reasonable belief* that the suspect resides at the place to be entered ... and [have] reason to believe that the suspect is present" at the time the warrant is executed. *U.S. v. Lauter*, 57 F.3d 212, 215 (2d Cir.1995); *see also U.S. v. Risse*, 83 F.3d at 216 (same); *U.S. v. Magluta*, 44 F.3d 1530, 1535 (11th Cir.)(same), *cert. denied*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995). It is not necessary that the officers' assessment as to whether the suspect is present is correct. It is only required that the officers have a reasonable belief that the suspect resides at the place to be entered and that he

---

6. Plaintiffs seem to question whether law enforcement officers attempting to execute a body attachment order, which is referred to as a "misdemeanor arrest warrant" in the complaint, have the same implicit authority to enter a residence that they have when executing a "felony arrest warrant". However, plaintiffs do not submit any legal basis for making the distinction. By raising the issue and failing to cite established case law to support their argument, plaintiffs would admit that entering a home to serve a "misdemeanor arrest warrant" does not violate a clearly established right when facts within the officers knowledge create a reasonable belief that the residence is that of the suspect and the suspect is present inside.

is currently present in the dwelling. *See United States v. Risse,* 83 F.3d at 216; *Magluta,* 44 F.3d at 1533–36; *Bratton v. Toboz,* 764 F.Supp. 965, 972 (M.D.Pa.1991).

■ While there is no dispute that the officers were attempting to execute on a facially valid warrant or that they reasonably believed the trailer was the residence of Mr. Lyles, there is a question of fact as to whether the officers possessed a reasonable belief that Mr. Lyles was present inside at the time they entered the trailer.

The defendants point out that the affidavits submitted in support of their motion state the following undisputed facts: (1) Officer Larry Merrill thought *he* heard someone in the residence; (2) Officer Merrill and Captain Hamilton personally felt the hood of the vehicle parked in front of the residence and found it to be warm; and (3) the neighbor who had been asked to telephone the police when she thought Mr. Lyles was home had in fact called. The defendants submit that these undisputed facts provided an objectively reasonable basis for believing Mr. Lyles was present inside at the time they entered his residence.

While it is true that the Plaintiffs cannot provide direct evidence that the officers did not feel the hood of the vehicle or that officer Merrill did not hear movement inside, a careful review of the officers' affidavits and the affidavit filed by the Plaintiffs reveals sufficient contradictory statements as to make it difficult to assess with certainty the facts possessed by the officers at the time they made the decision to enter the trailer that led them to believe Jesse Lyles was inside.

Captain Hamilton and Officers Merrill and LaMora each state that he was called to the scene by Officer Hodges, and that he made the decision to enter based in part on the statements made to him by Officer Brian Hodges that indicated plaintiff was in the trailer. In contrast, Brian Hodges swears that it was Officer LaMora who first arrived at the Lyles' home and requested the assistance of the other officers. Brian Hodges also denies seeing or hearing anyone inside the trailer, and he denies making any statements. Hodges further states that no one claimed to have seen Mr. Lyles in the resi-

dence, and that Captain Hamilton told him that they should not enter the trailer. None of the defendant officers' affidavits refers to the phone call made by the neighbor as a source of information on which he based his actions. Nor does any officer mention the statements attributed to the neighbor by Brian Hodges in his affidavit. As there is substantial dispute about the facts known to the officers at the time they entered the residence, a viable question of material fact does exist as to whether the officers' had a reasonable belief that Mr. Lyles was present in the residence at the time they entered. Therefore, with respect to this alleged violation, the officers are not entitled to summary judgment on the qualified immunity defense.

■ With respect to Chief LaMora, plaintiffs allege that he participated in the unlawful conduct because he gave the officers permission to forcibly enter the property. The affidavit of Brian Hodges states that he heard Captain Hamilton speak with the Chief over the radio and Chief LaMora told the officers to go into the trailer without first asking whether the officers believed Mr. Lyles was inside. The officers deny contacting the Chief. Clearly there is an issue as to whether the Chief did participate in the attempted arrest, and if so, whether it was objectively reasonable for him to tell the officers to forcibly enter the property. Therefore, summary judgment on the qualified immunity defense is not proper.

**2. The search of the residence.** The Plaintiffs also allege that once inside the residence, the search of the premises by the officers violated the Fourth Amendment prohibition against unreasonable searches and seizures because they did not have a separate search warrant.

■ Although a search warrant is not required in every case, the general rule has always been that, except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. *See Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967). *See*

*also U.S. v. Boettger,* 71 F.3d 1410, 1413 (8th Cir.1995).

■ An exception to this general rule exists when the police have an arrest warrant for the person whose home is entered. *See Payton v. New York,* 445 U.S. at 603, 100 S.Ct. at 1388. When executing an arrest warrant in a residence, officers may perform a protective sweep incident to the arrest to protect themselves or others. *U.S. v. Lauter,* 57 F.3d 212, 216 (2nd Cir.1995). *See also U.S. v. Magluta,* 44 F.3d 1530, 1535 (11th Cir.1995)("in order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry."); *U.S. v. Weber,* 518 F.2d 987, 990 (8th Cir.1975), (quick and cursory search of a basement in order to ascertain whether any other individuals were hiding there found lawful); *U.S. v. Blake,* 484 F.2d 50, 57 (8th Cir.1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974)(once inside, a quick and cursory viewing of the apartment is permissible to check for persons who may present a security risk); *U.S. v. Briddle,* 436 F.2d 4,7 (8th Cir.1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 824 (1971).

■ In *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), the Supreme Court explained the permissible scope of a protective sweep incident to arrest and held that during an arrest, officers may "without probable cause or reasonable suspicion[ ] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Beyond that limited cursory inspection, however, the officer must have articulable facts that support an inference that the area to be swept harbors an individual posing danger to those present. *Id. See also United States v. Cunningham,* 133 F.3d 1070 (8th Cir.1998), *cert. denied* —— U.S. ——, 118 S.Ct. 1823, 140 L.Ed.2d 960 (1998) .

■ Although no arrest was actually made, the search incident to arrest exception to the warrant requirement is applicable in this case if the officers had reason to believe that Mr. Lyles was inside the trailer at the time they entered. The officers could then have lawfully conducted a limited search or security check of the trailer in order to find Mr. Lyles or any other person who may have been hiding inside.

■ The conflicting affidavits preclude summary judgment of this issue. As set out herein above, there is an issue as to whether the officers and Chief LaMora (if he was even contacted) had an objectively reasonable belief that Mr. Lyles was in the home at the time they entered to execute the arrest warrant. Furthermore, the plaintiffs contend that, even if the officers lawfully entered the trailer, the search conducted was excessive in scope. The officers deny that they performed anything other than a cursory search of the premises looking for Mr. Lyles.[7] The affidavit of Brian Hodges however, states that the officers looked through mail, went through papers on a shelf, pulled up the bed sheets, opened the dresser drawers and pulled out clothing, and opened a glass box on top of the dresser. The plaintiffs have successfully raised genuine issues of fact as to whether the actions of the defendant officers in searching their home were lawful under established, pre-existing law. Therefore, summary judgment must be denied.

There is no allegation that Chief LaMora was directly responsible for the search being excessive under the circumstances. The Plaintiffs seek to hold Chief LaMora liable for this violation in his official capacity as the policy maker for the City of Barling regarding the serving of arrest warrants and the illegal conduct is evidence of the "official policy, custom and practice of the City of Barling of deliberate indifference towards the Fourth amendment rights of its citizens."

---

**7.** The officers do not submit any facts to support anything other than a limited, cursory protective sweep of the residence.

As set out herein above, any claims against the Chief in his official capacity may not be defended against on the basis of qualified immunity.

### C. Deprivation of Property Without Due Process of Law.

Plaintiffs next claim that their Fourteenth Amendment rights to be free from deprivation of property without due process of law were violated when the officers damaged their mobile home and its contents as they attempted to execute the arrest warrant and the taking of their personal property.

**1. Damage to the residence.** The defendant officers each deny causing any damage to the property.[8] The officers also contend that if any damage was caused, it was reasonably necessary for the purpose of executing the arrest warrant, and they are shielded from liability by the doctrine of qualified immunity.

 The destruction of property while performing the duty to execute an arrest warrant does not always violate a citizen's constitutional rights. The manner in which a search warrant is executed is subject to judicial review as to its reasonableness. *Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979). There is no constitutionally cognizable distinction between a "search" for items and a "securing of the premises" during execution of an arrest warrant, and an officer may be held liable under section 1983 for executing a warrant in an unreasonable manner. *Duncan v. Barnes,* 592 F.2d 1336, 1338 (5th Cir.1979). Destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment. *Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982)(destruction of furniture, wall paneling, and tape deck during execution of search warrant). Destruction caused by law enforcement officers in the execution of a search or arrest warrant must be necessary to effectively execute that warrant. *Ginter v. Stallcup,* 869 F.2d 384, 389 (8th Cir.

1989)(use of fire to flush armed fugitive from private residence was reasonable).

 The conflicting statements contained in the affidavits of Brian Hodges and the defendant officers create a genuine issue as to whether any damage was done to the mobile home. Furthermore, as previously discussed herein above, the objective reasonableness of the decision to enter the residence to execute the warrant is in issue. This in turn creates an issue as to whether it was objectively reasonable to use force. Therefore, summary judgment must be denied.

With respect to Chief LaMora, the same issues that preclude summary judgment on the Fourth Amendment violations also preclude summary judgment on this issue.

### *Conclusion.*

The conflicting evidence presented has made it impossible for the court to determine with certainty the information possessed by the defendant officers and/or Chief LaMora at the time of the alleged violations occurred. The objective reasonableness of the actions taken by the officers and Chief LaMora (if any) cannot be determined without first making a determination as to credibility. The plaintiffs have successfully raised genuine issues of material fact which preclude the grant of summary judgment based on the qualified immunity defense as it applies to the defendant officers and Chief LaMora. Therefore, defendants are not entitled to summary judgment on the qualified immunity defense. The motion for summary judgment on the issue of qualified immunity is DENIED.

IT IS SO ORDERED.

---

**8.** The officers' brief points out that summary judgment must be granted because the plaintiffs have no evidence to refute the specific denials of damage made by the officers. Since the brief was filed, however, plaintiffs have overcome this problem by filing the affidavit of Brian Hodges and a first and second amended complaint.