STATE of Minnesota, Appellant,

v.

Frederick Duane FISHER, Respondent.

No. C9–98–1053.

Court of Appeals of Minnesota.

Jan. 26, 1999.

Michael A. Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, MN (for appellant).

William E. McGee, Fourth District Public Defender, Warren R. Sagstuen, Assistant Public Defender, Minneapolis, MN(for respondent).

Considered and decided by RANDALL, Presiding Judge, LANSING, Judge, and SHORT, Judge.

# OPINION

RANDALL, Judge.

This appeal is from a pretrial order suppressing evidence in a prosecution for felony possession of a short-barreled shotgun. We affirm.

## FACTS

On September 20, 1997, at about 3:15 a.m., police received a "shots fired" call from 2716 Portland Avenue in Minneapolis. After securing the scene and approaching the apartment building, they noticed damage to a window on the second floor that appeared to be from a gunshot. A resident of the building told police the shooting was coming from the second floor. The officers entered the building and could smell gunpowder in the second floor hallway.

Sergeant James Kaju testified that based on the window damage and the smell of gunpowder, he suspected the gunfire had come from Apartment 201. After knocking loudly and receiving no response, police made a forcible entry into the one-bedroom apartment, where they found a single occupant, later identified as appellant Frederick Duane Fisher, lying on the bed in the bedroom. Three officers entered the bedroom and ordered Fisher out into the adjacent hallway of the apartment, where he was handcuffed and secured. The officers began searching for a gun. They found a shotgun between the mattresses of the bed. Sergeant Kaju estimated that a "couple minutes" had passed since the forced entry. Kaju testified that when Fisher was handcuffed, he was out in the hallway and standing about 15 feet or less from the bed. Kaju later testified that the distance was 15 feet. Another officer testified that he thought Fisher was still in the bedroom when the gun was found. But that officer also agreed that Fisher was handcuffed and guarded when the gun was found. That officer estimated the distance from Fisher to the bed to be only a couple of feet. An officer testified that the gun was found within about a minute or less after Fisher was handcuffed.

The district court granted Fisher's motion to suppress the shotgun, finding that Fisher was handcuffed, under the guard of at least one armed officer and "about 15 or so feet" from the mattress when the gun was found. The court found that the gun was discovered about two minutes after Fisher had been handcuffed. The court concluded that the warrantless search was not justified as a search incident to arrest and later denied the state's motion for reconsideration.

## ISSUE

Did the district court clearly err in suppressing evidence?

## ANALYSIS

■ To prevail in a pretrial appeal, the state must show *clearly and unequivocally* that the district court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the prosecution. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987).

■ The state challenges the district court's findings that Fisher was 15 feet away from the mattress when the shotgun was found and that two minutes had elapsed since Fisher was handcuffed. But it was the pros-

ecutor who, after Sergeant Kaju testified that Fisher was "less than 15 feet" from the bed, twice elicited more definite testimony that he was 15 feet away. Thus, the evidence directly supports the district court's finding that the distance was 15 feet. Similarly, Sergeant Kaju testified that the gun was found "a couple minutes" after Fisher was handcuffed. The fact that the other officer testified differently, estimating the time elapsed at less than a minute, does not make the district court's findings anywhere near clearly erroneous. *See State v. George,* 557 N.W.2d 575, 578 (Minn.1997) (stating clearly erroneous standard is applied in reviewing findings of fact relating to Fourth Amendment suppression issue). Moreover, the district court had the benefit of photographs of the scene that have not been included in the record on appeal.

■ When police make a lawful arrest, they may search

the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). We have no difficulty in holding that the district court did not err in ruling an area about 15 feet away from a handcuffed and guarded arrestee is not within the "immediate control" of the arrestee. The state submits no authority holding the *Chimel* "immediate-control" test is satisfied under similar facts. Instead, the state argues that a "bright-line rule" should apply.

There is a "bright-line rule" applicable to the scope of searches of *vehicles* incident to arrest. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (holding police, incident to arrest of occupant of automobile, may search entire passenger compartment of vehicle). There is another "bright-line rule" that allows a search of a *person* incident to arrest regardless of the reason for the arrest. *State v. Rodewald,* 376 N.W.2d 416, 419–20 (Minn. 1985). But there is no "bright-line rule," as the state urges in this case, that would allow a search of a residence incident to arrest

regardless of how far the search occurs from the arrested person. *Cf. Geer v. State,* 406 N.W.2d 34, 36 (Minn.App.1987) (citing "bright-line rule" in rejecting defense argument that duffel bag searched was too far away from defendant arrested on street, but treating search as *search of defendant's person* ), *review denied* (Minn. July 15, 1987). If the law were as argued by the state, nothing would remain of the *Chimel* "immediate-control" test.

■ A number of factors have been stressed by the courts in applying the *Chimel* "immediate-control" test, in addition to the arrestee's distance from the area: (1) whether the arrestee was handcuffed or otherwise restrained; (2) whether police were positioned so as to block the arrestee from the area searched; (3) the ease of access to the area itself; and (4) the number of officers present. 3 Wayne R. LaFave, *Search & Seizure* § 6.3(c), at 306–07 (3d ed.1996).

■ The district court looked only to the factor of distance, whether the gun was within Fisher's "wingspan." Although we conclude that other factors are important rather than just "reach," as "reach" is an oversimplification of *Chimel,* we agree with the district court's conclusion that the weapon should be suppressed. Fisher was handcuffed. There were at least two officers present with him. The area beneath the mattress, whether Fisher was 3 or 4 feet away, or 15 feet, was simply not easily accessible to a handcuffed and guarded man, if we take a logical and reasonable approach to the word "accessible." We note that if, on the same facts, the district court, after judging the credibility of the witnesses, had come to the conclusion that the weapon was accessible and should be allowed into evidence, and the defendant had appealed, we are not sure what our conclusion on appeal would have been. We do not need to address that hypothetical. But what we can say on appeal is that giving proper deference to the district court's assessment of the credibility of oral testimony, we cannot say that the district court clearly and unequivocally erred in coming to the findings of fact that it did and suppressing the evidence.

The facts support the district court's determination that the search occurred beyond Fisher's area of "immediate control" under *Chimel.* There is no evidence that the shotgun posed an immediate threat to others with access to the apartment. By arresting and handcuffing Fisher, police had secured the only person with access to the weapon. No other persons were found in the apartment. The officer could have secured the apartment while obtaining a search warrant. Given that Fisher was subdued, handcuffed, guarded, and outside the room, no exigent circumstances existed justifying the warrantless search. *Cf. United States v. McKinney,* 477 F.2d 1184, 1185–86 (D.C.Cir.1973) (holding warrantless entry of hotel room to remove sawed-off shotgun seen by hotel staff was justified by exigent circumstances including fact that shotgun was "an ominous threat" in itself); *State v. Hendrickson,* 584 N.W.2d 774, 777–78 (Minn.App.1998) (holding public safety exception to *Miranda* warning requirement did not apply where there was no evidence gun had been left in public place).

Fisher argues that police lacked probable cause to arrest him because they had no idea whether he was the shooter or a victim or potential victim. We do not address that argument. We conclude the district court did not err in finding the warrantless search was outside the scope of a valid search incident to arrest.

### DECISION

The district court did not clearly err in suppressing a shotgun seized from an area beyond the "immediate control" of a handcuffed and guarded defendant. Those circumstances presented no exigency justifying a warrantless seizure.

**Affirmed.**

LANSING, Judge (dissenting).

I respectfully dissent because I believe the search was justified by exigent circumstances. *See State v. Hummel,* 483 N.W.2d 68, 72 (Minn.1992) (exigent circumstances may consist of either a highly compelling single consideration, such as danger to persons, or a totality of circumstances).

The facts leading up to Frederick Fisher's arrest are not in dispute. Police received a call reporting that shots had been fired at 2716 Portland Avenue South. A police sergeant, responding within minutes, heard at least one shot when he was about 50 yards from the building. The sergeant smelled gunpowder immediately upon entering the building. A person believed to be a tenant in the building said the shots had come from the second floor.

After the forced entry, the officers saw an expended shotgun shell casing on the floor of Fisher's bedroom, but the weapon was not visible. Police observed fresh bruises or scrapes on Fisher's back and were uncertain whether he was the shooter. The absence of the weapon and the possible existence of another "shooter" presented a real danger to other residents and the police. *See United States v. Cunningham,* 133 F.3d 1070, 1072 (8th Cir.1998) (warrantless search justified by exigent circumstances when safety of law enforcement officers or others is threatened), *cert. denied,* —— U.S. ——, 118 S.Ct. 1823, 140 L.Ed.2d 960 (1998); *United States v. Antwine,* 873 F.2d 1144, 1147 (8th Cir.1989) (safety of individuals may constitute exigent circumstances justifying warrantless search); *State v. Lohnes,* 344 N.W.2d 605, 611–12 (Minn.1984) (fact that weapon had not been found added to exigent circumstances); *Geer v. State,* 406 N.W.2d 34, 37 (Minn.App.1987) (danger to public or arresting officers demonstrates exigent circumstances). The danger of a missing and presumably loaded shotgun and the possibility of another person who could shoot the gun created exigent circumstances that justified the search.